SHESLER et al., Appellees and Cross–Appellants,

v.

CONSOLIDATED RAIL CORPORATION, Appellant and Cross–Appellee, et al.

[Cite as *Shesler v. Consol. Rail Corp.*, 151 Ohio App.3d 462, 2003-Ohio-320.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80950.

Decided Jan. 24, 2003.

464

466

Doran & Murphy, L.L.P., Michael H. Doran and Brian A. Goldstein, for appellees and cross-appellants.

Burns, White & Hickton and David A. Damico, for appellant and cross-appellee.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} The appellant, Consolidated Rail Corporation, appeals the judgment of the Cuyahoga County Court of Common Pleas, Civil Division, in which the lower court denied the appellant's motion for judgment notwithstanding the verdict, motion for new trial, motion to set off, and motion for remittitur.

{¶ 2} The appellees, Richard Shesler and Donald Speidel Jr., were employed by the appellant and its predecessors for over 40 years. During the course of their employment, the appellees worked as engineers in the appellant's yards and

on the appellant's locomotives.  Often, they worked up to 16 hours a day, 7 days a week, and traveled throughout the appellant's rail network.

{¶ 3}  In time, it was discovered that the appellees had developed progressive respiratory symptoms, and subsequent evaluations determined that they had contracted asbestosis, a disease process consisting of fibrous scar tissue within the lung caused solely by the inhalation of asbestos fibers.

{¶ 4}  As a result of this diagnosis, the appellees initiated the instant action with the lower court claiming that their injuries were a result of their unprotected exposure to asbestos during their employment with the appellant.  Specifically, the appellees brought this action under the Federal Employers' Liability Act ("FELA"), Section 51 et seq., Title 45, U.S.Code, which requires rail carriers to provide a safe working environment and imposes liability for negligence when employees are injured.

{¶ 5}  Additionally, the appellees brought this action under the Locomotive Inspection Act ("LIA"), Section 20701 et seq., Title 49, U.S.Code, which imposes absolute liability for rail carriers that use or allow to be used a locomotive whose parts and appurtenances are not in proper condition and safe to operate, resulting in unnecessary danger of personal injury.  Section 20701, Title 49, U.S.Code.

{¶ 6}  At trial, the appellees presented several witness, both lay and expert, to bolster their contention that their injuries were caused by exposure to asbestos-related products during their employment with the appellant and its predecessors.

{¶ 7}  First to testify was appellee Richard Shesler.  Shesler's initial testimony related to his employment with the railroad, but he was prevented from testifying about the "composition of certain materials" alleged to contain asbestos because he allegedly did not have personal knowledge of the materials' composition, according to the lower court.[1]

{¶ 8}  Therefore, in order to establish a foundation for this line of testimony, appellee Donald Speidel Jr. took the stand.  Speidel testified that (1) he worked on the railroad from 1947 until he retired in 1993;  (2) he was able to identify asbestos on the railroad because he unloaded bags of asbestos on the railroad, the bags were marked "asbestos," that he observed bills of lading marked "asbestos," and he observed workers applying these bags of asbestos to the locomotives;  and (3) he identified specific asbestos manufacturers as Johns–Manville and Owens–Corning.

---

1.  At trial, Shesler was prevented from mentioning the word "asbestos" due to the lower court's determination that he lacked personal knowledge of the contents of the material, pursuant to *Goldman v. Johns–Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691.

{¶ 9}   After establishing this foundation, the appellees recalled Shesler to the stand to continue his testimony.  Thereafter, Shesler testified that he worked on the railroad for over 43 years and that he slept in bunkhouses above the area in which asbestos was being removed during engine repairs.  Specifically, he testified that he witnessed laborers applying materials to locomotives and removing it from them during repairs.  Last, Shesler testified that it was common practice on the railroad for employees to rest their feet on the water piping wrapped in the asbestos material.  As a result of resting their feet on this piping, the material would become worn and deteriorated, thereby releasing asbestos-containing dust into the air.

{¶ 10}   Further, the appellees introduced into evidence the appellant's responses to plaintiffs' request to admit.  In sum, the appellant admitted the following:  (1) asbestos-containing products were used to cover water lines on EMD Diesel locomotives utilized during the years 1955–1960, 1960–1965, 1965–1970, 1970–1975, and 1975–1980;  and (2) asbestos-containing products were used by other diesel locomotive manufacturers, including EMD, Baldwin and GE, throughout the years of service during which the appellees worked.

{¶ 11}   Additionally, the appellees offered the testimony of several other individuals with knowledge of the use of asbestos-containing materials in the railroad industry.  Dr. William Longo, a Ph.D. in material sciences, conducted a work-practice study utilizing approved EPA, OSHA, NIOSH, and ACGIH standards which demonstrated asbestos release resulting from the very work practices testified to by the appellees, i.e., the resting of feet on the asbestos-covered cab heater pipes over an extended period of time.  Dr. Longo testified that these activities over an extended period of time caused the asbestos wrapping on the heater pipe to become friable, thereby releasing airborne asbestos dust.

{¶ 12}   The appellees' second expert was Dr. Michael Ellenbecker, Ph.D., an industrial hygienist, who testified via video deposition.  Ellenbecker testified that, in his opinion, the appellees were exposed to significant levels of airborne asbestos in the early 1950s and in the diesel era as well.  Some of the documents on which Ellenbecker based his opinions were originally ruled admissible, but later inadmissible at trial.  In order to cure this defect, the lower court gave the jury a corrective instruction to disregard the reference to the documents, since ample evidence existed to reach a conclusion based on Dr. Ellenbecker's years of experience and knowledge in the instant area.

{¶ 13}   The appellees also presented the videotaped testimony of Ramon Thomas, Manager of Industrial Hygiene for the appellant.  In sum, Thomas testified that he saw asbestos on diesel locomotives as recently as 1999 and that asbestos-containing materials were used to cover cab heater pipes.  Specifically, the appellees offered a memorandum generated by the appellant which outlined

the appellant's utilization of fiberglass as a substitute for asbestos as insulation on cab heater piping to indicate the appellant's knowledge of asbestos-related materials on their locomotives.

{¶ 14} At the close of testimony, the jury was formally charged and, after deliberation, returned a verdict in favor of the appellees finding the appellant negligent and in violation of FELA and LIA. From this verdict, the instant appeal now stems.

{¶ 15} The appellant presents five assignments of error. The first assignment of error states:

{¶ 16} "I. The trial court erred in not granting a new trial, where the plaintiffs failed to establish a foundation for testifying that the products that they saw on locomotives contained asbestos."

{¶ 17} The appellees assert one cross-assignment of error having a common basis in both law and fact to the appellant's first assignment of error. Accordingly, both will be addressed together. The appellees' cross-assignment of error states:

{¶ 18} "I. The lower court's ruling regarding *Goldman* was error and severely prejudiced plaintiffs."

{¶ 19} The appellant argues that the appellees failed to establish a foundation for testifying that the products they saw on locomotives contained asbestos. The appellant bases this contention on Evid.R. 602, which states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Further, the appellant points to *Goldman v. Johns–Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691, in which the Ohio Supreme Court held that the wife of a former bakery worker could not offer affidavits from several witnesses that they "believed" and "were told" that certain products in the bakery contained asbestos because they were not based on the personal knowledge of the witnesses.

{¶ 20} In reviewing the record, it is clear that the instant matter differs greatly from the facts of *Goldman*. Unlike *Goldman*, the case at hand is replete with the appellees' familiarity and personal knowledge of asbestos. At trial, Speidel testified that during his 46 years of working on the railroad, he became familiar with asbestos and its applications. Moreover, he testified that he observed men mixing bags of asbestos, that he saw the label "asbestos" on the bags, that he saw bills of lading marked "asbestos" and that he was intimately familiar with the product's use. Further, Shesler worked on the railroad for over 43 years and had personal knowledge of asbestos on the appellant's locomotives. Although admittedly Shesler did not actually "see" the word "asbestos," the evidence reflects that he had personal knowledge of the materials that he worked

with during his 43 years of employment. Additionally, substantial evidence reflected that both men were exposed to the locomotive cab heater pipes, which were wrapped with asbestos insulation. Evidence indicated that during the appellees' employment with the railroad, it was common practice to rest their feet on the exposed asbestos insulating pipe wrapping, which in time would cause the asbestos insulation to become worn, releasing asbestos-containing dust into the air.

{¶ 21} In contrast, the witnesses in *Goldman* admitted that they did not have personal knowledge of whether asbestos was present at the defendants' bakery, only that they "believed" or "were told" of asbestos-containing material. Clearly, there is a marked difference in the testimony of the appellees based on personal knowledge which specifically referred to asbestos as opposed to the situation in *Goldman*, which was based largely on speculation and allegations by secondary witnesses.

{¶ 22} Last and most notable, the appellant admitted to utilizing asbestos-containing materials in areas of the railroad and on locomotives where the appellees worked. This further reinforces and lends credence to the testimony of the appellees indicating their personal knowledge of asbestos-containing products being used.

{¶ 23} Without belaboring the evidence presented at trial, it is clear that the appellees offered sufficient evidence to establish their personal knowledge of asbestos products, specifically, their personal exposure to products containing asbestos while employed on the railroad. The instant matter differs substantially from the facts in *Goldman*. Accordingly, we find the appellees' cross-assignment of error to be well taken and the appellant's first assignment of error to be without merit.

{¶ 24} The appellant's second assignment of error states:

{¶ 25} "II. The trial court erred in permitting the expert testimony of William Longo, Ph.D. and Michael Ellenbecker, Ph.D., where no foundation had been laid for plaintiffs' exposure to asbestos tape wrap on locomotive cab heater pipes."

{¶ 26} The appellant contends that the trial court erred in admitting the testimony of appellees' expert witnesses because the appellees had failed to establish a foundation for the evidence. Specifically, the appellant contends that the testimony was improperly admitted because no foundation had been laid for the appellees' exposure to asbestos tape wrap on locomotive cab heater pipes.

{¶ 27} Evid.R. 702, which controls the admission of expert testimony during the course of trial, provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education, may testify thereto in the form of an opinion or otherwise." The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court. *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708; *State v. Minor* (1988), 47 Ohio App.3d 22, 546 N.E.2d 1343. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 28} First, the appellant argues that Dr. Longo's testimony was admitted in error because there was no foundation to indicate that the appellees rested their feet on the appellant's cab heater pipes, which formed the basis for the doctor's abrasion study. Specifically, Dr. Longo conducted an abrasion study utilizing approved standards that demonstrated asbestos release resulting from locomotive employees resting their feet on the cab heater pipes over extended periods of time. Dr. Longo indicated that these types of activities caused the asbestos wrap to become worn and friable, thereafter causing the asbestos-containing material to become airborne.

{¶ 29} We cannot endorse the appellant's argument with regard to Dr. Longo's testimony. In reviewing the record, there exists substantial evidence indicating the presence of asbestos wrap on the appellant's cab heater pipers as well as the appellees' exposure to those cab heater pipes. As previously stated, Speidel testified that he delivered and saw asbestos being applied to the locomotives on which he and Shesler worked. Further, both appellees indicated that it was a "common practice" on the railroad to rest their feet on the cab heater pipes, which, in time, would cause wear to the asbestos insulation. Moreover, both indicated that they would rest their feet on the cab heater pipes inside the locomotive, sometimes in excess of 16 hours a day, throughout their entire 40-year careers of employment with the railroad.

{¶ 30} Accordingly, this court can only conclude that the testimony of Dr. Longo was relevant and was of assistance to the jury as trier of fact and that an appropriate evidentiary foundation existed for the admission of the doctor's testimony. See *Cicchillo v. A Best Products Co.* (Jan. 10, 2002), Cuyahoga App. No. 79228, 2002 WL 42963; *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444. Moreover, this court in *Ball v. Consol. Rail Corp.* (2001), 142 Ohio App.3d 748, 758, 756 N.E.2d 1280, previously determined that Dr. Longo's asbestos abrasion study is admissible for the purpose of determining whether asbestos fibers could be released if some of the conditions as described by the appellees had occurred, such as resting their feet on the cab heater pipes.

Specifically, an experiment is admissible if it is relevant and helpful to one aspect or principle of the event at issue, even though it does not recreate the conditions of the event. Id., citing *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 614–615, 687 N.E.2d 735.

{¶ 31} Next, the appellant contends that the expert testimony of both Dr. Longo and Dr. Ellenbecker was inadmissible under Evid.R. 703, which provides:

{¶ 32} "Rule 703. Bases of Opinion Testimony by Experts

{¶ 33} "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

{¶ 34} The requirements for the admissibility of evidence pursuant to this rule have several times been considered by the Ohio Supreme Court. In *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, the court admonished:

{¶ 35} "The rule clearly requires that the facts upon which an expert opinion is based must be perceived by the expert or admitted in evidence. The commentators on Ohio evidence agree that each element of fact upon which the opinion is based *must either be perceived by the expert or admitted during the course of the trial.*" (Emphasis added.) Id. at 124–125, 9 OBR 347, 459 N.E.2d 526.

{¶ 36} In *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, the court added that in considering the admissibility of the testimony, the language of the rule must be particularly noted:

{¶ 37} "[W]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied. It is important to note that Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions *or* facts or data admitted in evidence." (Emphasis added.) Id. at 126, 570 N.E.2d 1118.

{¶ 38} The appellant contends that the testimony of both Dr. Longo and Dr. Ellenbecker was elicited prior to evidence being admitted to indicate that the appellees were indeed exposed to asbestos. Accordingly, this testimony was not based on facts already admitted, as required by Evid.R. 703. However, in reviewing the record, this contention is without merit.

{¶ 39} As discussed, there was sufficient evidence introduced during the course of the trial to indicate that the appellees were exposed to asbestos while employed on the appellant's railroad. Additionally, experts have always been permitted to testify regarding information which forms the basis of their opinions. This has never been limited to "hands-on" experience, but can include

review of applicable treatises, formal classes, discussions with colleagues, personal investigations, reading of books of science, and information gained from other experts in the field. These science items are "perceived" by state-of-the-art witnesses in compliance with Evid.R. 703. See *Hurley v. Connor* (Mar. 22, 1984), Cuyahoga App. No. 47187, 1984 WL 4569; *Mahr v. G.D. Searle & Co.* (1979), 72 Ill.App.3d 540, 28 Ill.Dec. 624, 390 N.E.2d 1214, 1237; *Bluebird Baking Co. v. McCarthy* (App.1935), 19 Ohio Law Abs. 466, 470, 3 O.O. 490, 36 N.E.2d 801; *Frank v. Herancourt Brewing Co.* (1907), 5 Ohio Law Rep. 559, 1907 WL 789.

{¶ 40} Therefore, since both Dr. Longo and Dr. Ellenbecker formed their opinions based on their knowledge and expertise in their respective fields, and on facts admitted at trial, their testimony was properly admitted pursuant to Evid.R. 703. Consequently, the appellant's second assignment of error is not well taken.

{¶ 41} The appellant's third assignment of error states:

{¶ 42} "III. The trial court erred in permitting plaintiffs' counsel and witnesses to refer to documents not in evidence, which materially prejudiced defendants."

{¶ 43} At trial, the lower court initially permitted the appellees to refer to the Hartford Steam Boiler documents during videotaped testimony; however, later the lower court ruled the documents to be inadmissible.[2] The appellant contends that the initial admission of the Hartford documents materially prejudiced their defense. We note that the Hartford documents were never published to the jury.

{¶ 44} At trial, counsel for the appellees referred to the Hartford documents in the following depositions presented to the jury at trial: (1) the videotaped testimony of Dr. Longo at 42–43; (2) the deposition of Dr. Ellenbecker, *Glen High v. Consol. Rail Corp.* at 68–70; and (3) the trial testimony of Roman Thomas, Conrail industrial hygienist, from *Blackburn v. Consol. Rail Corp.* at 897–811.

{¶ 45} The appellant contends that the Hartford documents were utilized by the appellees to lay a foundation for the proposition that there was asbestos tape insulation on the cab heater pipes at the time when there was no testimony to that effect. Additionally, the appellant argues that the Hartford documents were utilized to lay the foundation for the admission of Dr. Longo's pipe abrasion study because the documents referred to the pipe abrasion study.

{¶ 46} It is well established that the addition, admission, or exclusion of evidence is a matter committed to the sound discretion of the trial court.

---

2. The Hartford Steam Boiler study was a series of documents produced by the Hartford Boiler Company for Conrail which analyzed the asbestos-abatement procedures utilized by Conrail.

*O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 407 N.E.2d 490. Consequently, for the admission or exclusion of certain evidence to be overturned on appeal, there must be a showing that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Davis* (1988), 49 Ohio App.3d 109, 550 N.E.2d 966; *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 47} As stated, the Hartford documents were never published to the jury. Further, as previously stated, the testimony of both Dr. Longo and Dr. Ellenbecker was based not only on the appellees' personal experience, but experience, knowledge, and perceptions of the doctors, evidence permissible under Evid.R. 703, as previously discussed.

{¶ 48} Additionally, the testimony of Mr. Thomas, an expert in industrial hygiene, was based on expertise gained from years of work experience in the field. "[W]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *Solomon*, supra, 59 Ohio St.3d at 126, 570 N.E.2d 1118. The appellant's argument that the testimony was based solely on the Hartford documents is wholly without merit since the testimony of Dr. Longo, Dr. Ellenbecker, and Mr. Thomas was based not only on their perceptions from the Hartford documents, but on years of study and research in their respective fields.

{¶ 49} Further, the fact that the documents were not admitted into evidence does not make the testimony or reference to the documents inadmissible or prejudicial. In *Chandler & Assoc. v. America's Healthcare Alliance* (1997), 125 Ohio App.3d 572, 709 N.E.2d 190, the lower court permitted the plaintiff's expert to offer his testimony, which was partially based on documents not admitted into evidence. This court held that because the plaintiff's expert actually perceived the documents for himself, and used his perceptions of these documents in addition to other sources to form the basis of his opinion, his testimony was therefore admissible. Specifically, "[s]ince Burke [plaintiff's expert] perceived the tax returns and did not base his opinion, in whole or in major part, on the data contained in the tax returns, the trial court's admission of Burke's testimony did not constitute a clear and prejudicial abuse of discretion." Id. at 587, 709 N.E.2d 190.

{¶ 50} As in *Chandler*, the appellees' witnesses all perceived the Hartford documents, but to argue that they based their entire opinion on those documents flies in the face of reason, considering the substantial experience and knowledge each witness possessed. Further, the lower court did issue a curative instruction to the jury with regard to statements concerning the Hartford documents. A jury is presumed to follow the instructions given to it by the trial

judge. *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237, 1246, citing *Parker v. Randolph* (1979), 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713.

{¶ 51} The appellant's contention that the appellees' case hinged on references concerning the Hartford documents is erroneous in light of the abundant evidence offered at trial. Moreover, in determining whether the declaration of a mistrial was proper in a particular case, courts have declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. See *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900; *Cecil v. Beam* (Mar. 28, 1997), Montgomery App. No. 16210, 1997 WL 156591. Instead courts have adopted an approach which grants great deference to the trial court's discretion in this area in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial. *Glover,* supra, at 19, 517 N.E.2d 900. Where a trial court is exercising discretion, the test for finding an abuse of that discretion is more stringent than the test for finding an error of law—it requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Leigh v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 143, 666 N.E.2d 1128. Curative instructions have been recognized as an effective means of remedying errors or irregularities which occur during trial. *State v. Zuern* (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585.

{¶ 52} In the case at hand, the record reveals that the jury was instructed to ignore any testimony concerning the Hartford documents. There is nothing in the record before us to suggest that the jury was less than conscientious in that regard. Accordingly, we must presume that the jury properly disregarded any testimony regarding those documents. Therefore, any error that could have possibly existed before the Hartford documents were declared inadmissible was remedied by the curative instruction provided by the lower court. As stated, there existed extensive evidence which indicated asbestos-containing materials being utilized on the appellant's locomotive cab heater pipes notwithstanding the Hartford documents.

{¶ 53} Accordingly, the appellant's third assignment of error is without merit and not well taken.

{¶ 54} The appellant's fourth assignment of error states:

{¶ 55} "IV. The trial court erred in not granting a new trial because the weight of the evidence produced at trial did not support a finding that defendants violated the LIA."

{¶ 56} The appellant argues that the lower court erred in failing to grant a new trial for the appellant because the appellees failed to lay a competent

evidentiary foundation to support the jury's finding that the appellant violated the LIA.

{¶ 57}  Section 20701 of the LIA provides as follows:

{¶ 58}  "A railroad carrier may use or allow to be used a locomotive or tender on its railroad lines only when the locomotive or tender and its parts and appurtenances—

{¶ 59}  "(1) are in proper condition and safe to operate without unnecessary danger of personal injury.

{¶ 60}  "(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter;  and

{¶ 61}  "(3) can withstand every test prescribed by the Secretary under this chapter."

{¶ 62}  The LIA supplements FELA by imposing on interstate railroads a duty to provide safe equipment.  *Lilly v. Grand Trunk W. RR. Co.* (1943), 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411.  To establish a violation of the LIA, a plaintiff must show that the carrier's equipment is defective.  *Bolan v. Lehigh Valley RR. Co.* (C.A.2, 1948), 167 F.2d 934, 936.  In proving a violation of the LIA, a plaintiff must *only offer more than a scintilla of evidence* in order to create a jury question on the issue of employer liability, but not much more.  *Aparicio v. Norfolk & W. RR. Co.* (C.A.6, 1996), 84 F.3d 803, 810.  "The test is whether 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.'"  *Bowe v. Consol. Rail Corp.* (C.A.6, 2000), 230 F.3d 1357, citing *Rogers v. Missouri Pacific RR. Co.* (1956), 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493.

{¶ 63}  Accordingly, and as stated, the appellees offered competent evidence to prove an LIA violation.  The appellees offered competent and credible evidence which was properly admitted.  Additionally, the appellees offered evidence which indicated the presence of asbestos on the locomotives on which the appellees worked during their employment with the appellant.  Similarly, the appellees offered evidence which would indicate a defective condition on the appellant's locomotive, that being the asbestos wrapping on the cab heater pipes. Therefore, we cannot endorse the appellant's contention that the appellees failed to offer sufficient evidence to support the jury's finding that there was asbestos on the appellant's locomotives.

{¶ 64}  The appellant secondarily argues that any asbestos on the appellant's locomotives was not present on an integral or essential part of the completed locomotive.  Specifically, the LIA governs only "whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments

definitely prescribed by lawful order of the Interstate Commerce Commission." *Mosco v. Baltimore & Ohio RR.* (C.A.4, 1987), 817 F.2d 1088, 1091. However, the LIA is not limited to specifically named parts or appurtenances; rather, the determination is a jury question. In *Green v. River Terminal Ry. Co.* (N.D.Ohio 1984), 585 F.Supp. 1019, 1027, the court stated the following:

{¶ 65} "This does not imply, however, that any device not prescribed by the Secretary of Transportation cannot be the basis for liability under the statute. The Boiler Act speaks in the conjunctive—no locomotive shall be used unless all parts and appurtenances are in proper condition and may be employed without unnecessary peril to life and limb, and all parts must be able to withstand any tests as may be prescribed by rules and regulations of the Secretary of Transportation."

{¶ 66} Accordingly, in reviewing the evidence submitted at trial, we can only conclude that sufficient evidence existed for the jury to conclude that the appellant violated the LIA. The jury could reasonably find that the cab heater pipes are a "part" or "appurtenance" of the locomotive engine cab. Further, the jury could find that the conditions to which the appellees were exposed on the appellant's railroad posed the very "unnecessary danger of personal injury" contemplated by LIA. See, also, Section 20701(1), Title 49, U.S.Code. "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for a jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And an appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." *Lavender v. Kurn* (1946), 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed.2d 916. The jury's finding that the appellant violated the LIA was a jury determination of fact which was supported by competent credible evidence. Therefore, the appellant's fourth assignment of error is not well taken.

{¶ 67} The appellant's fifth assignment of error states:

{¶ 68} "V. The trial court erred in refusing to grant defendants' motion for judgment notwithstanding the verdict regarding plaintiff, Donald Speidel Jr., because he failed to file his cause of action within three years of the date his cause of action accrued."

{¶ 69} In a FELA action, the plaintiff has the burden of proof to both allege and prove that his cause of action was commenced within the three-year period. *Emmons v. S. Pacific Transp. Co.* (C.A.5, 1983), 701 F.2d 1112. On October 23, 1997, Speidel and the appellant entered into an agreement to toll the statute of limitations with regard to an asbestos-related lawsuit beginning on

October 21, 1997. Thereafter, Speidel filed his lawsuit on October 13, 1999, alleging asbestos-related injuries due to his employment with the appellant.

{¶ 70} The appellant argues that Speidel was aware of his injuries as early as 1993, which is more than three years prior to his filing of a claim and subsequent tolling of the statute of limitations. Specifically, the appellant alleges that Speidel became aware of his injuries in 1993 after a hospital visit indicated that he had pleural plaques. After learning that he had pleural plaques, the appellant argues, Speidel had an affirmative duty to investigate the cause of the pleural plaques. Further, the appellant contends that in 1990, Speidel marked a questionnaire generated by the appellant which indicated that Speidel knew that he was exposed to lead, fine dust or other noxious agents while employed by the appellant. Specifically, the appellant points to the following colloquy to show that Speidel knew the "fine dust" to include asbestos at the time he answered the questionnaire in 1990:

{¶ 71} "Q. So you knew in 1990 that you had been around dust and everything, right?

{¶ 72} "A. Oh, yes.

{¶ 73} "Q. Okay. Did you mean asbestos dust back then?

{¶ 74} "A. All kinds of dust."

{¶ 75} Armed with this information, the appellant contends that Speidel possessed sufficient critical facts that he should have known the probable cause of his injury in 1993 to be asbestos-related.

{¶ 76} Under the LIA, Section 56, Title 45, U.S.Code, a railroad employee must file his or her claim within three years of his or her injury. The statute provides: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." Under FELA, courts have consistently held that the statute of limitations "begins to run when a reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Campbell v. Grand Trunk W. RR. Co.* (C.A.6, 2001), 238 F.3d 772; *Townley v. Norfolk & W. RR. Co.* (C.A.4, 1989), 887 F.2d 498, 501 (the accrual of the cause of action occurs when it is obvious from the plaintiff's actions that he possessed sufficient information that he knew or should have known that he had been injured by his work with the railroad); *Fonseca v. Consol. Rail Corp.* (C.A.6, 2001), 246 F.3d 585; *Matson v. Burlington N. Santa Fe RR.* (C.A.10, 2001), 240 F.3d 1233.

{¶ 77} Interestingly, as noted by appellees in their appellate brief, the appellant contends that Speidel should have known he was afflicted with an asbestos-related injury as early as 1990 or at the latest 1993, but appellant earlier argues, in its first assignment of error, that Speidel was unqualified to identify

asbestos or asbestos dust while employed at the appellant's railroad yards. It is ironic that the appellant first argues that Speidel could not personally identify asbestos or asbestos-containing materials, but, now, appellant argues that Speidel should have possessed the knowledge necessary to identify not only asbestos but resulting injuries.

{¶ 78} Notwithstanding this contention, the appellant argues that in 1993, Speidel was notified that he had pleural plaques during treatment for bronchitis and therefore he should have recognized that his affliction was in some manner related to asbestos exposure while employed by the appellant. However, the appellant fails to recognize that the evidence indicates that Speidel was asymptomatic in 1993, and it was not until 1998 that Speidel was referred to a lung specialist to fully investigate his affliction. Upon referral in 1998, Speidel became fully aware of his diagnosis and its relation to his exposure to asbestos. Simply, the evidence indicates that Speidel had no symptoms or reason to suspect a life-threatening lung injury prior to his referral to a specialist in 1998. This position is further reinforced by his treating physician's failure to refer Speidel in 1993 to a specialist. Clearly, if Speidel's treating physician in 1993 did not believe that a referral to a specialist was necessary, then how could a layperson such as Speidel be charged with such knowledge to investigate this condition, as urged by the appellant? The testimony indicates that Speidel sought treatment in 1993 for bronchitis. Speidel indicated that his health improved after this visit and that he did not have any breathing problems from then until 1997.

{¶ 79} Accordingly, in reviewing the evidence, it is obvious from Speidel's actions that he did not possess information sufficient to show that he knew, or should have known, that he had been injured by his work with the railroad. The evidence indicates that in 1998, Speidel was referred to a lung specialist, and only at this point in time was he made aware that his condition was related to his work on the railroad. The statute of limitations begins to run when the employee *becomes aware of his disease and its cause. Kichline v. Consol. Rail Corp.* (C.A.3, 1986), 800 F.2d 356, 358. Speidel did not know what pleural plaques were and first learned that his affliction was an asbestos-related disease only after being referred to the lung specialist in 1998.

{¶ 80} Therefore, we cannot conclude that the lower court erred in failing to grant the appellant's motion for judgment notwithstanding the verdict, since Speidel's cause of action was timely filed within the requisite statute of limitations period. The appellant's fifth assignment of error is without merit.

Judgment affirmed.

TERRENCE O'DONNELL, J., concurs.

TIMOTHY E. MCMONAGLE, A.J., concurs in judgment only.