DECISION.
{¶ 1} Plaintiff-appellant John Jackson was employed by defendant-appellee CSX Transportation, Inc., ("CSX") and its predecessor railroads from 1974 to 2002. Jackson began his employment as a service attendant in CSX's South Louisville locomotive shops. From 1976 to 1987, Jackson worked as a machinist helper, machinist apprentice, and journeyman machinist. In 1987, Jackson was transferred to Huntington, West Virginia, where he worked as a machinist in the locomotive shops. Jackson was transferred to CSX's Ashland, Kentucky, car shops in 1989. In the early 1990s, Jackson was transferred to Louisville, Kentucky, where he worked as a trainman/switchman until May 14, 2002, when he retired due to complications from chronic pancreatitis.
 {¶ 2} Throughout his employment with CSX, Jackson came into contact with certain solvents, using them to clean and degrease railroad equipment. Beginning in the 1980s, Jackson began to experience headaches, nausea, dizziness, dry skin, rashes, itching, memory loss, and difficulty sleeping. By the late 1980s, Jackson suspected that the symptoms were caused by the solvents that he was using at CSX. The symptoms continued into the 1990s. Throughout the 1980s and 1990s, Jackson reported the symptoms on various medical questionnaires, but no physician followed up with treatment. In early 2000, Jackson spoke to a former railroad employee about his symptoms.
 {¶ 3} Jackson became aware that other railroad employees were experiencing similar symptoms. In June 2001, Jackson consulted neuropsychologist Dr. Martine RoBards. Dr. RoBards performed a series of tests on Jackson. In February 2003, Dr. RoBards prepared a report that stated that Jackson suffered from toxic encephalopathy, a chemically caused permanent degenerative brain injury.
 {¶ 4} On May 23, 2003, Jackson filed a complaint in the Hamilton County Court of Common Pleas, seeking damages under the Federal Employer's Liability Act ("FELA")[1] for injuries resulting from CSX's negligence in exposing him "to dangerous, unsafe and toxic chemicals, solvents and their injurious fumes." CSX filed a motion for summary judgment based upon FELA's three-year statute of limitations.[2] The trial court granted CSX's motion, stating that Jackson "knew or should have known he sustained a permanent injury as a result of his employment prior to May 2000, and simply failed to exercise reasonable diligence in investigating his claim. * * * No trier of fact could reasonably find Jackson was unaware of his cause of action until after May 2000."
 {¶ 5} Jackson has appealed. His sole assignment of error alleges that the trial court erred in granting CSX's motion for summary judgment.
 {¶ 6} Summary judgment is proper pursuant to Civ.R. 56(C) when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[3] Appellate review of the trial court's decision to grant summary judgment is de novo.[4]
CSX, as the moving party in this case and the party asserting an affirmative defense, had the initial burden to show the absence of a genuine issue of material fact.[5]
 {¶ 7} The FELA provides a remedy for railroad employees injured or killed by the railroad's negligence.[6] The FELA "has been `liberally construed * * * to further Congress'[s] remedial goal' of holding railroads responsible for the physical dangers to which their employees are exposed."[7]
 {¶ 8} Pursuant to Section 56 of the FELA, a cause of action must be "commenced within three years from the day the cause of action accrued."[8] The United States Supreme Court held inUrie v. Thompson[9] that the discovery rule applies in cases of latent occupational diseases where "the afflicted employee can be held to be injured only when the accumulated effects" from continual exposure to a harmful condition over time "manifest themselves." Under the discovery rule, a cause of action accrues when a reasonable person knows, or in the exercise of due diligence should know, of his injury and its cause.[10] A railroad employee's FELA cause of action accrues when it is clear from his actions that he was in possession of sufficient information that he knew or should have known that he had been injured by his work with the railroad.[11]
 {¶ 9} In support of its motion for summary judgment, CSX relied on Jackson's deposition and affidavit, in which Jackson stated that by the late 1980s he had begun to experience headaches, nausea, dizziness, dry skin, rashes, itching, memory loss, and difficulty sleeping, and that he suspected his symptoms had been caused by the solvents he was using in his work for CSX. CSX argued that Jackson was aware by the late 1980s that he had been injured by his work with the railroad. CSX further argued that when Jackson became aware of his symptoms and their potential cause, he was under a duty to investigate. Pursuant to Jackson's own testimony, CSX argued, reasonable minds could only have concluded that a reasonable person in Jackson's position would have known, or in the exercise of reasonable diligence should have known, that he had been injured and that his injuries had been caused by his exposure to the solvents.
 {¶ 10} In CSX Transportation, Inc. v. Adkins,[12] two CSX railroad employees filed a suit seeking damages for toxic encephalopathy. Both men had been employed for many years at CSX in the diesel locomotive shop where they had used solvents to degrease locomotive electrical parts. From the beginning and throughout their years of employment with CSX, both employees had experienced various symptoms of exposure to the solvents. Both employees testified that they had experienced the symptoms from the start of their employment, that they were aware that their symptoms improved when they moved away from the solvents, and that they had complained that the symptoms were caused by their exposure to the solvents. CSX argued that, based upon their own testimony, the employees knew, or in the exercise of reasonable diligence should have known, prior to three years before the lawsuits were filed, that they had been injured and that their injuries were caused by their exposure to the solvents at work.
 {¶ 11} The Georgia Supreme Court stated in Adkins that CSX's argument failed "to recognize the medical distinction between temporary symptoms of non-injurious exposure, and the other and different symptoms of permanent degenerative brain disease. The plaintiff's medical expert testified by affidavit that the symptoms of exposure were not injuries and [were] not the same as the symptoms of toxic encephalopathy, a disease which is purely latent. An individual may suffer symptoms of exposure for years without or before developing this chemically caused injury or disease."[13] The Adkins court held that the evidence "was sufficient to authorize a jury to find that [the employees] did not possess all the critical facts necessary to recognize injury and causation until they were examined and diagnosed by a physician."[14]
 {¶ 12} The Florida First District Court of Appeal citedAdkins in Batten v. CSX Transportation, Inc.,[15]
holding that the trial court had erred in granting summary judgment on the basis of FELA's statute of limitations in favor of CSX against an employee who had claimed that the railroad had negligently exposed him to toxic solvents, causing him to suffer the symptoms of "organic affective syndrome." The Batten court held that the affidavits filed created a genuine issue of material fact as to whether the employee "possessed all the critical facts necessary to recognize injury and causation until [he was] examined and diagnosed by a physician."
 {¶ 13} In this case, Jackson experienced various symptoms throughout his employment with CSX, but there is nothing in the record to distinguish between the temporary symptoms of non-injurious exposure to solvents and the symptoms of toxic encephalopathy, a latent brain injury. CSX argues that a reasonable person in Jackson's position, who suffered from Jackson's symptoms, would have known, or in the exercise of reasonable diligence should have known, that he had been injured and that his injuries had been caused by his exposure to the solvents. But there is nothing in the record to show when the actual injury to Jackson's brain occurred. CSX, as the moving party and the party asserting the statute of limitations as an affirmative defense, had the initial burden to show the absence of a genuine issue of material fact. CSX failed to do so.
 {¶ 14} On the state of the record before us, we cannot say as a matter of law that Jackson was barred from bringing suit. We hold that there exist genuine issues of material fact as to when Jackson's brain injury occurred, whether Jackson should have investigated sooner the possibility of permanent injury, and when he knew or should have known of his injury and its cause. We do not hold that a medical diagnosis is always necessary to trigger the running of FELA's statute of limitations. We hold that, on the state of this record, we cannot say as a matter of law that Jackson possessed all the critical facts necessary to recognize his injury and its cause prior to his examination and diagnosis.[16] We point out that Jackson stated in his affidavit that he had relied on representations by CSX's supervisors that the solvents were not harmful, that the effects of the solvents were temporary, that taking breaths of fresh air would dissipate the effects of the solvents, and that CSX would not use the solvents if there was any danger of permanent harm.
 {¶ 15} We hold that the trial court erred in granting summary judgment in favor of CSX. The assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with law and this decision.
Judgment reversed and cause remanded.
Gorman and Sundermann, JJ.
Judge Rupert A. Doan was a member of the panel, but died before the release of this decision.
[1] Section 51 et seq., Title 45, U.S.Code.
[2] Section 56, Title 45, U.S.Code.
[3] See Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 364 N.E.2d 267.
[4] See Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186,738 N.E.2d 1243.
[5] See Fonseca v. Consolidated Rail Corp. (C.A.6, 2001),246 F.3d 585.
[6] See id.
[7] See id., citing Consolidated Rail Corp. v. Gottshall
(1994), 512 U.S. 532, 114 S.Ct. 2396.
[8] See Section 56, Title 45, U.S.Code.
[9] (1949), 337 U.S. 163, 69 S.Ct. 1018.
[10] See United States v. Kubrick (1979), 444 U.S. 111,100 S.Ct. 352; Campbell v. Grand Trunk Western Railroad Co. (C.A.6, 2001), 238 F.3d 772.
[11] See Shesler v. Consolidated Rail Corp.,151 Ohio App.3d 462, 2003-Ohio-320, 784 N.E.2d 725, citing Fonseca v.Consolidated Rail Corp., supra.
[12] (1994), 264 Ga. 203, 442 S.E.2d 737.
[13] See id.
[14] See id.
[15] (Fla.App. 2001), 811 So.2d 673.
[16] See CSX Transportation, Inc. v. Adkins, supra; Battenv. CSX Transportation, Inc., supra.