[Cite as *Nuckols v. Consolidated Rail Corp.*, 2022-Ohio-4309.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

RANDY NUCKOLS

APPELLANT

V.

CONSOLIDATED RAIL
CORPORATION

AND

CSX TRANSPORTATION, INC.

APPELLEES

COURT OF APPEALS NO. {48}L-21-1217

TRIAL COURT NO. CI0201902279

DECISION AND JUDGMENT

Decided: December 2, 2022

* * * * *

Brian Reddy, for appellant.

Kevin C. Alexanderson and Holly M. Olarczuk-Smith, for appellees.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Randy Nuckols, appeals the October 13, 2021 judgment of the Lucas County Court of Common Pleas, granting summary judgment in favor of defendants-appellants, Consolidated Rail Corporation and CSX Transportation, Inc. For the following reasons, we reverse the trial court judgment.

## I. Background

{¶ 2} Randy Nuckols has been employed by Consolidated Rail Corporation or CSX Transportation, Inc. ("the railroads") for various periods dating back to 1976. On July 11, 2014, he was diagnosed with oropharyngeal (throat) cancer. On June 9, 2016, he filed a negligence action against the railroads in Philadelphia County, Pennsylvania under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. 51 et seq., claiming that his cancer was caused by toxic materials or carcinogens to which he was exposed during the course of his employment. The court dismissed the action without prejudice on October 16, 2017, under the doctrine of forum non conveniens. The dismissal entry provided— apparently by stipulation of the parties—that if Nuckols refiled the action in Ohio or another appropriate jurisdiction within 120 days of the order, "the filing date to be used for statute of limitations purposes in the refiled action shall be June 9, 2016." Nuckols did not refile within 120 days. He refiled in Lucas County, Ohio on April 30, 2019.

{¶ 3} The railroads filed a motion for summary judgment, arguing that Nuckols's claim was time-barred under 45 U.S.C. 56 because it was filed more than three years after Nuckols knew or, in the exercise of reasonable diligence, should have known, that he had cancer and that his cancer was caused (or contributed to) by his exposure to toxic materials or carcinogens in the workplace. They maintained that Nuckols knew that he was exposed to diesel exhaust and asbestos in the course of his employment; he knew in 2014, that he had throat cancer; a reasonable person in his situation would have been

2.

expected to inquire about the cause of his cancer once it was diagnosed; there was publicly-available information linking throat cancer to asbestos and diesel exposure; therefore, Nuckols should have known that his cancer might have been connected to his work for the railroads and he can be charged with constructive knowledge of the potential cause for his cancer.

{¶ 4} Nuckols responded that in a FELA occupational disease action, the statute of limitations begins to run when the employee becomes aware of his disease and its cause. He maintained that while he was aware of his throat cancer diagnosis in July of 2014, he did not know at that time that his cancer was caused by diesel and asbestos exposure, and he only first considered that this may have been the cause in April of 2016, when he saw an attorney Facebook advertisement. Nuckols contended that when a cause of action accrues in a FELA case is a fact-intensive and case-specific inquiry that must be resolved by a jury after consideration of numerous factors. He maintained that reasonable minds may differ as to when he should have known of a potential link between his diagnosis and his workplace exposure, and a genuine issue of material fact prevented the court from granting summary judgment to the railroads.

{¶ 5} The trial court granted the railroads' motion. It first observed that the question of Nuckols's timeliness depended on whether his action accrued before or after December 23, 2014. This is because the statute of limitations was tolled while the matter

3.

was pending in the Philadelphia County Court.[1] Ultimately, the trial court concluded that the evidence was insufficient to establish a triable factual dispute as to whether Nuckols's claim accrued after July 11, 2014—Nuckols's date of diagnosis. The court found that as of that date, Nuckols knew of his diagnosis and knew that he had been exposed to diesel and asbestos in his workplace. It rejected any suggestion that Nuckols's claim accrued in 2016, when he saw his attorney's Facebook advertisement, because, "at best, Plaintiff merely learned of a potential legal claim"—"everything he knew about his cancer and its potential cause was otherwise already known to him in July 2014." Employing an objective standard, it found that Nuckols's testimony established that some investigation into the potential cause of his cancer was required but was not performed.

---

[1]　　In *Burnett v. New York Cent. R. Co.,* 380 U.S. 424, 434-35, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the U.S. Supreme Court held that "when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." It further clarified that the period is tolled "until the state court order dismissing the state action becomes final by the running of the time during which an appeal may be taken or the entry of a final judgment on appeal." The *Burnett* tolling rule has been extended to protect a plaintiff whose case is dismissed for *forum non conveniens* as well. *Reed v. Norfolk & W. Ry. Co.*, 635 F.Supp. 1166, 1168 (N.D.Ill.1986).

Here, Nuckols filed his complaint in Pennsylvania on June 9, 2016. The Pennsylvania court dismissed the case on October 16, 2017. Under Pa.R.A.P. 903(a), a notice of appeal must be filed within 30 days after the entry of the order from which the appeal is taken, which, in this case, would be November 15, 2017. Therefore, the statute of limitations was tolled from June 9, 2016, to November 15, 2017—524 days. By our calculation, this means that the timeliness of Nuckols's action depends on whether his claim accrued before or after November 23, 2014. The trial court stated that the timeliness of Nuckols's action depended on whether his claim accrued before or after December 23, 2014, but it appears that the trial court did not include the time for appeal.

4.

**{¶ 6}** Nuckols appealed. He assigns the following error for our review:

> The trial court erred in determining there was no genuine issue of material fact for the jury to determine as to when Randy Nuckols knew or should have known that his throat cancer was caused or contributed to by his toxic exposures at the railroad.

## II. Legal Standard

**{¶ 7}** Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

**{¶ 8}** When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526

5.

N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Analysis

{¶ 9} In his sole assignment of error, Nuckols argues that the trial court erred when it determined as a matter of law that there exists no genuine issue of material fact when he knew or should have known that his throat cancer was caused by or contributed to by his toxic exposures at the railroads. Nuckols contends that the trial court inappropriately weighed evidence and considered inferences in concluding that he should have known of the causal link between his cancer and workplace exposure, thereby usurping the role of the jury.

6.

{¶ 10} Nuckols explains that FELA has a humanitarian purpose intended as a response to the special needs of railroad workers who are exposed on a daily basis to risks inherent in their work. He claims that FELA is a broad remedial statute and courts have adopted a standard of liberal construction to carry out its purpose. As such, Nuckols maintains, a plaintiff's burden under FELA is significantly lighter than in an ordinary negligence action and juries should determine FELA cases unless there is a complete absence of probative facts supporting the plaintiff's position. Nuckols describes the burden on a railroad employee as "relaxed."

{¶ 11} According to Nuckols, the railroads rely on his subjective knowledge in seeking to prove his action untimely. He claims that an objective inquiry was necessary to determine when he knew or should have known, in the exercise of reasonable diligence, the essential facts of his injury and its cause. However, Nuckols further contends that the statute of limitations begins to run in occupational disease cases when the employee has "definite knowledge" that his disease is work-related. He maintains that an employee's mere suspicion is not sufficient to begin the accrual of a cause of action under FELA.

{¶ 12} Finally, Nuckols maintains that the question of when an employee should have known that his injury was caused by workplace exposure to carcinogens is fact-intensive and requires consideration of numerous factors, such as the degree of inquiry made by the employee, the number of possible causes of the injury, whether medical

7.

advice indicated no causal connection, the complexity of the employee's symptoms, the expert knowledge or diagnostic skill of the medical doctors or experts consulted, and the existence of a medically-recognized and documented causal link between the employee's symptoms and his working conditions. Nuckols insists that a jury must consider these factors and determine when he knew or should have known that diesel exhaust or asbestos caused his throat cancer.

{¶ 13} The railroads respond that employing an objective standard, on the date of his diagnosis, Nuckols had all the facts necessary to discover whether there was a connection between his cancer and his exposures at work. They contend that if Nuckols had made an effort to investigate, there was enough publicly-available information that could have led him to make the connection, but he made no effort to investigate. The railroads emphasize that actual knowledge of causation is not necessary for an action to accrue; rather, a cause of action accrues for statute of limitations purposes when the plaintiff knew or in the exercise of reasonable diligence, should have known the essential facts of injury and cause. They insist that Nuckols was required to take affirmative action to discover the connection between his injury and workplace exposure.

{¶ 14} The railroads cite numerous cases in which courts of appeals and various federal district courts have decided the issue of accrual in favor of the railroads. They contend that an injured party need not have "definite knowledge" that his injury is work-related for a claim to accrue under FELA, and if there are many possible causes for his or

8.

her injury, the injured plaintiff need not be certain which cause is the governing cause. The railroads cite several cases where courts have rejected arguments made by other plaintiffs represented by Nuckols's lawyers, claiming that they discovered their injuries only after seeing attorney advertisements. They distinguish cases cited by Nuckols where courts denied summary judgment to the railroads.

{¶ 15} According to the railroads, a FELA cause of action accrues when (1) a plaintiff has knowledge of his injury, (2) the plaintiff has knowledge of the exposure that he alleges caused the injury, and (3) there is information available to anyone conducting a reasonably diligent investigation that would connect the exposure to the injury. They claim that Nuckols ignored his duty of due diligence. They caution that the statute of limitations would be undermined if an accrual date depended on a plaintiff by chance stumbling upon an attorney advertisement, which may occur decades after a plaintiff has knowledge of both his injury and exposure. The railroads maintain that "[u]nder settled FELA law, when a plaintiff has enough information to investigate whether his work is a possible cause of his injury, his claim accrues and he ha[s] three years in which to conduct a reasonably diligent investigation and decide whether to bring a claim."

{¶ 16} Finally, the railroads challenge Nuckols's claim that courts should apply a more lenient standard for claim accrual under FELA. They acknowledge that FELA dictates a more lenient standard of proximate cause than would apply in a common-law negligence action. But they claim that nothing in the text of FELA creates a more lenient

9.

standard of proof for the accrual of a claim or requires a court to submit the question of timeliness to the jury in the face of a properly-supported motion for summary judgment demonstrating that the claim is untimely.

### 1. FELA, Its Statute of Limitations, and the Burden of Proof

{¶ 17} The FELA provides that "[e]very common carrier by railroad while engaging in [interstate] commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the [carrier's] negligence." 45 U.S.C. 51. "Congress enacted the FELA as a 'broad remedial statute' to assist railroad employees when an employer's negligence causes injury." *Klem v. Consol. Rail Corp.,* 191 Ohio App.3d 690, 2010-Ohio-3330, 947 N.E.2d 687, ¶ 30 (6th Dist.), citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-562, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). "The FELA is a 'response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.'" *Id.,* quoting *Sinkler v. Missouri Pacific RR. Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). It is intended to be read liberally in favor of injured railroad employees. *Id.,* citing *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

{¶ 18} A FELA action must be commenced "within three years from the day the cause of action accrued." 45 U.S.C. 56. For latent injuries and causes such as those

10.

involved in occupational disease cases, "[c]ourts have consistently used 'the discovery rule' to determine when the statute of limitations for a FELA claim begins to run." *Shepard v. Grand Trunk W. R.R. Inc.,* 8th Dist. Cuyahoga No. 92711, 2010-Ohio-1853, ¶ 18, citing *Urie* at 170. *See also Henry v. Norfolk Southern Ry. Co.,* 605 Fed.Appx. 508, 511 (6th Cir.2015). Under the discovery rule, the statute of limitations "begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Shepard* at ¶ 18, quoting *Campbell v. Grand Trunk W. RR. Co.*, 38 F.3d 772, 775 (6th Cir.2001). It is an objective inquiry. *Caputo v. CSX Transp., Inc.*, 70 F.3d 1271 (6th Cir.1995). Importantly, a claim does not accrue at the point at which the plaintiff realizes that a claim is actionable in the eyes of the law. *See United States v. Kubrick*, 444 U.S. 111, 113, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (explaining that "for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause" should not receive identical treatment).

{¶ 19} Because the railroads are the moving party and are asserting the statute of limitations as an affirmative defense, they have the initial burden to show the absence of a genuine issue of material fact. *See Jackson v. CSX Transp., Inc.,* 1st Dist. Hamilton No. C-050370, 2006-Ohio-6045, ¶ 13 ("CSX, as the moving party and the party asserting the statute of limitations as an affirmative defense, had the initial burden to show the absence of a genuine issue of material fact."). *See also Campbell* at 775 ("Because the statute of

11.

limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run."); *Hayes v. Norfolk Southern Corp.,* 25 Fed.Appx. 308, 313 (6th Cir.2001) (same); *Brown v. Union Pacific RR. Co.,* D.Neb. No. 8:18CV273, 2020 WL 3428984, f.n. 1 (Jun. 23, 2021) (concluding that in FELA cases where railroad moves for summary judgment on the basis of the statute of limitations, railroad has burden); *Robinson v. Illinois Cent. R. Co.,* E.D.Pa. No. 2:08–89339, 2011 WL 4907401, *1 (Feb. 14, 2011) ("At the summary judgment stage, under Rule 56(c), the moving party bears the burden of proving that there is no genuine issue of material fact as to whether the plaintiff knew or should [have] known of his injury and its cause within the statute of limitations period.").

{¶ 20} Where summary judgment is granted by the trial court on statute-of-limitations grounds, an appellate court must determine "whether (1) the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued."  *Campbell* at 775, citing *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092, 1094 (7th Cir.1990)..

## 2.  What Nuckols Knew

{¶ 21} Nuckols does not dispute that he knew of his diagnosis on July 11, 2014. He submits that there remains a genuine issue of material fact regarding when he knew or should have known that his throat cancer was work-related.  For purposes of summary judgment, the railroads do not challenge Nuckols's position that he did not know his

12.

throat cancer was connected to his employment. They claim, rather, that he *should have known*, and that a reasonably diligent search of publicly-available information would have revealed the connection.

{¶ 22} Nuckols testified at deposition that he was never trained by the railroads concerning asbestos or diesel exhaust and was not told that they could cause cancer or are carcinogenic. Nuckols testified that as a machinist, as far back as 2004, he would have to enter a locomotive into the computer, and if there was a "hit" in the computer, the locomotive would need to be sent for asbestos abatement. But he said that he did not know what asbestos looked like and had never been trained that asbestos exposure could be hazardous to his health. He was aware from media reports that asbestos was a hazard in the fiberglass industry, but he had never seen anything in the general media or any attorney advertisements indicating that it was a hazard in his industry. And while he once served as a local chairman for the union, he never dealt with any employee complaints regarding exposure to asbestos.

{¶ 23} Nuckols also testified that he did not understand that diesel fuel or exhaust could be hazardous to his health. He testified that he never reviewed any publications addressing diesel fuel or exhaust.

{¶ 24} In 2005, Nuckols's doctor sent him to check for COPD. Although the notes from that visit indicate that he "has been exposed to second-hand smoke his whole life, as well as environmental exposure to diesel fumes at work," he did not recall

13.

discussing whether his exposure to diesel exhaust could adversely affect his health. He testified that his doctor was aware that he worked for the railroad.

{¶ 25} In December of 2013, Nuckols noticed a lump in his neck. After further testing and biopsy, he was formally diagnosed with cancer in July of 2014. He asked the doctor who removed his tumor, Dr. Shariff, what had caused the cancer, and Dr. Shariff said that he did not know. The railroads interpret Nuckols's testimony to mean that he asked Dr. Shariff what "place in the body" his cancer came from. But if this was unclear, it was clarified by defense counsel in a follow-up question:

Q: Okay. Other than the one time talking to Dr. Shariff after the tumor was removed, did you speak with any other physician about the cause of the cancer?

A: I don't know if I talked to the oncologist or not. I know I talked to Dr. Shariff.

Plaintiff's counsel also inquired:

Q: Just so I'm clear, you had one discussion with Dr. Shariff sometime in 2014, she said I don't know what the cause of it was.

A: It's a he.

Q: He, excuse me.

A: That's fine.

Q: So no further inquiry in 2015 to any physician, correct?

A: I don't recall any other conversations about where it came from.

Q: And 2016 no discussions, correct, with any physician about the cause of the throat cancer, correct?

A: That's correct.

{¶ 26} After that, Nuckols had no other discussions with doctors concerning the possible cause of his cancer. He performed a Google search to find out what head and neck cancer was, but did not learn much from that search.

{¶ 27} Nuckols testified that he first made the connection between his cancer and his exposures at the railroad when he saw an attorney ad on Facebook in 2016. Nuckols said that he had no understanding in 2015 that asbestos could cause disease, aside from mesothelioma, which he saw in law firms' television advertisements. He guessed he was "just naïve," but he never thought about it until he saw his attorney's Facebook advertisement in 2016.

### 3. What Nuckols Should Have Known

{¶ 28} The railroads insist that by July 11, 2014, Nuckols possessed all the essential facts necessary to investigate whether there was a connection between his exposures at work and his injury. They maintain that a reasonable person could have connected the injury with the workplace exposure through a reasonably diligent search. They claim that courts regularly decide the issue of timeliness as a matter of law when the plaintiff had sufficient information to investigate the possible cause of his or her

injury.  The railroads cite a number of cases in support of their position.  While those cases, indeed, grant summary judgment in favor of the defendants, those cases are factually inapposite.

{¶ 29} For instance, the railroads cite *Wells v. Norfolk Southern Ry. Co.*, 6th Cir. No. 96-5267, 1997 WL 103319, * 1-2  (Mar. 6, 1997), for the basic proposition that the 'due diligence' requirement means that a plaintiff who has reason to suspect that his injury is work related must take steps to see whether this is, in fact, the case."   However, in *Wells*, the employee—who had experienced hearing loss—had been told by his employer that he must wear hearing protection equipment, required him to participate in a hearing conservation program, and administered annual hearing tests.  The court concluded that under these circumstances, a reasonable employee "would infer that his job pose[d] a threat to his hearing."  *Id.* at * 1.

{¶ 30} The railroads also cite *McNutt v. CSX Transp., Inc*., W.D.Ky. No. 3:08-CV-601-H, 2010 WL 1688788, *2 (Apr. 26, 2010), for the proposition that "[a] medical diagnosis * * * is not required for a plaintiff to reasonably know that his injury is possibly related to his work."  However, in *McNutt*, the employee's injury—bilateral torn rotator cuffs—were, in fact, diagnosed and had been surgically treated more than three years before he filed suit, and he had told his doctor that he had "'difficulty in reaching out for objects in the overhead position at his job' and 'is exposed to heavy repetitive work in the overhead position.'"  *Id.* at * 1.

16.

**{¶ 31}** And the railroads cite *Reinhardt v. CSX Transp., Inc.*, W.D.Ky. No. 3:97CV-356-S, 1998 WL 34078436, *1 (Sept. 25, 1998), for the proposition that a claim accrues when the plaintiff has enough information to charge him with knowledge of the potential cause of his injury and to impose on him an affirmative duty to investigate. But in *Reinhardt,* the plaintiff—who suffered knee injuries from "walking on ballast, or large rocks, that make up the walkways between the tracks in the train yard"—conceded that he knew about his knee injuries more than three years before he filed suit and admitted at his deposition that he had complained to three of his supervisors about the ballast." *Id.* at * 1.

**{¶ 32}** The railroads also cite several cases involving one of Nuckols's attorney's law firm, where courts granted summary judgment to the railroads after concluding that the plaintiffs' claims accrued sometime before seeing the firm's advertisements:

- *Garza v. Union Pacific RR. Co.,* D.Neb. No. 8:18CV391, 2020 WL 2037087, *4 (April 28, 2020) (finding that plaintiff's claim accrued on August 13, 2015, when his doctor spoke with him about colorectal cancer—not in 2018 when he saw law firm advertisement—because plaintiff knew for decades that he had been exposed to hazardous materials at work, the exposure affected his overall health, and following his diagnosis, doctors told him his work environment was one potential cause of his cancer);

- *Pope v. Union Pacific RR. Co.,* D.Neb. No. 8:18CV421, 2019 WL 6615189, *3 (Dec. 5, 2019) (finding that plaintiff's claim accrued February 4, 2013, when his doctor spoke with him about colon cancer—not in 2017 when he saw law firm advertisement—because plaintiff knew of his diagnosis, knew he had been exposed to hazardous materials at work that affected his health, and failed to investigate the causal connection between those facts);

- *McLaughlin v. BNSF Ry. Co.,* D.Neb. No. 4:18-CV-3047, 2019 WL 4855147, *3 (Oct. 1, 2019) (finding that plaintiff's claim accrued March 6, 2015, when he was diagnosed with bladder cancer—not when he saw attorney Facebook ad—because plaintiff knew of his diagnosis, knew he had been exposed to hazardous materials at work, and failed to investigate the causal connection between those facts);

- *Smith v. BNSF Ry. Co.,* D.Neb. No. 4:17-CV-3062, 2018 WL 6529503, *3 (Oct. 16, 2018) (finding that plaintiff's claim accrued on March 10, 2014, when he learned he had bladder cancer—not after seeing attorney advertisement—because plaintiff knew about his cancer, knew about the chemicals and hazards to which he'd been exposed over the years, and did nothing to inquire into the cause of his condition except retain counsel);

- *Crawford v. CSX Transp., Inc.,* Ala.Cir.Ct. No. CV-2017-905358.00 (Feb. 27, 2019) (finding that plaintiff's complaint was filed outside statute of limitations

where he was diagnosed with leukemia in January of 2012, did not file his complaint until December 22, 2017, and failed to counter railroad's evidence that reasonably diligent search would have revealed publicly-available information showing link between cancer and workplace exposure); and

- *Lechner v. Consol. Rail Corp.,* Ind.Ct.App. No. 22A-CT-182, 2022 WL 3223387 (Aug. 10, 2022) (finding that plaintiff's complaint was filed outside the statute of limitations where complaint was filed two years after seeing law firm advertisement—eight years after initial diagnosis—and plaintiff did not inquire of his doctors as to cause, read literature provided by doctors, or perform any other inquiry).

{¶ 33} The railroads do not cite, acknowledge, or attempt to distinguish other cases (from the same jurisdiction as *Garza*, *Pope*, *McLaughlin*, and *Smith*) where the courts reached opposite conclusions. *See Greger v. Union Pacific RR. Co.,* D.Neb. No. 8:18CV577, 2020 WL 3489521 (Jun. 26, 2020); *Bettisworth v. BNSF Ry. Co.*, D.Neb. No. 8:17-CV-491, 2021 WL 1627770 (Apr. 27, 2021), recon. denied sub nom., *Olson v. BNSF Ry. Co.*, D.Neb. No. 8:17-CV-491, 2021 WL 3552523 (Aug. 11, 2021); *Gillett v. BNSF Ry. Co.*, D.Neb. 4:20-CV-3120, 2022 WL 2528623 (Jul. 22, 2022).

{¶ 34} In *Greger*, for instance, the plaintiff was diagnosed with renal cancer on June 10, 2010. He asked his urologist and oncologist what caused his cancer and they said they did not know. Plaintiff later saw a television commercial for a law firm

19.

regarding "railroad cancer," and filed suit on December 13, 2018. Plaintiff testified that he knew inhaling diesel fumes was not good for him, but did not believe it caused cancer. He also knew since the 1990's that asbestos could cause cancer, but did not know that this was true of asbestos contained in brake pads.

{¶ 35} The court recognized that a FELA claim does not accrue until the claimant becomes aware that he has been injured *and* that his injury is work-related, but it explained that the employee must know, or have reason to know, the cause of his condition. The court acknowledged that the statute of limitations begins to run when the plaintiff discovers or, in the exercise of reasonable diligence, *should* discover, the critical facts of injury and cause—an objective inquiry—and that a plaintiff has an affirmative duty to investigate the potential cause of his injury. But while the court emphasized that the plaintiff need not know the *actual* cause of his injury, it observed that "'[w]hen a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury.'" *Id.* at * 3, citing *DuBose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1031 (5th Cir.1984). The court commented that this is especially true where cancer is at issue, given that there are many causes of cancer, including those that are natural and non-negligent.

{¶ 36} In analyzing whether and when a plaintiff reasonably should know of his claim, the court explained that courts should consider two factors: (1) whether a reasonable person in the plaintiff's situation would have been expected to inquire about the cause of his injury in the first place, and (2) whether an inquiry would have disclosed the cause of his injury so as to put him on notice of his claim. But, the court cautioned, "there is a legal distinction between one's own suspicion that something is a cause and the requisite objective knowledge that begins the accrual clock." *Id.* at * 4. It recognized that "[a]pplication of the discovery rule involves determining what the plaintiff knew or should have known, which is a factual question that is appropriate for the trier of fact." *Id.*, citing *Granfield v. CSX Transp., Inc.,* 597 F.3d 474, 482 (1st Cir.2010).

{¶ 37} The court ultimately concluded that the railroad did not show that it was entitled to summary judgment based on the statute of limitations. It found that the evidence did not show conclusively that the plaintiff was aware of the critical fact that his work on the railroad could have caused his cancer during the time between his diagnosis in 2010, and December 13, 2015 (three years before he filed his complaint). It found plaintiff's deposition testimony equivocal, establishing only that he knew some aspects of his work may have been bad for his health, which, it noted, was "different than having knowledge of the fact that exposures at work caused his cancer." *Id.* at * 5. Although the plaintiff may have suspected at the time of the diagnosis that his work was connected to the cancer, he asked his doctors what caused his cancer and was told the cause was

21.

unknown. Accordingly, the court concluded, "[t]here is no evidence that a reasonable person, in the face of such a response, would have continued to connect the cancer to exposures at work." *Id.* To the contrary, the doctors' responses arguably laid to rest plaintiff's suspicion. The court refused to presume that the plaintiff knew more than his doctors about the cause of the cancer.

{¶ 38} The other cases we referenced above are factually similar to *Greger* and include similar analyses. In *Bettisworth*, D.Neb. No. 8:17-CV-491, 2021 WL 1627770, the deceased employee was diagnosed with lung cancer in October 2014, and died December 31, 2014. Shortly after her death, her husband saw a TV commercial that led him to believe that his wife's cancer was caused by workplace exposures, and he filed a wrongful-death and survival action on December 26, 2017. The railroad claimed that the survival action was time-barred. It claimed that information contained in the employee's oncologist's records demonstrated that she suspected that her cancer was caused by her workplace exposure to diesel fumes and asbestos. Specifically, the social history portion of the patient intake form noted that the employee was exposed to "asbestos, diesel fumes, and others at work." *Id.* at * 2. The employee's husband claimed, however, that the employee's primary care physician attributed her cancer to smoking. He admitted that neither he nor his wife performed any additional investigation into the cause of her cancer.

22.

{¶ 39} The court stated all the same legal standards that the *Greger* court cited and applied the same two-part analysis. It found that the evidence did not show, as a matter of law, that the employee or her husband were aware that her work on the railroad could have been a cause of her cancer, nor did any doctor inform them of such. The court concluded that "what the plaintiff or [his wife] knew about the potential causes of her lung cancer—and when they knew it—is a factual question that is appropriate for a jury to decide. " *Bettisworth* at * 3.

{¶ 40} And in *Gillett*, D.Neb. 4:20-CV-3120, 2022 WL 2528623, the plaintiff was diagnosed with head and neck cancer on December 1, 2015, a "malignant neoplasm" of the lower lobe of his left lung on April 13, 2017, and lung cancer in December of 2017. He filed his complaint October 8, 2020. The railroad argued that plaintiff's cause of action accrued as early as December 1, 2015, but no later than April 13, 2017, thus his complaint was time-barred.

{¶ 41} Again, the court reiterated the same legal standards as *Greger* and *Bettiwsworth*. But it emphasized that missing from the defendant's statute-of-limitations argument was any "evidence that the plaintiff either knew, or should have known in the exercise of reasonable diligence, that diesel exhaust is carcinogenic." *Id.* at * 11. The court acknowledged that the plaintiff knew he had been exposed to diesel exhaust and that he and others found it to be an "offensive nuisance." *Id.* But it found that the evidence, when construed in a light most favorable to the plaintiff, would not have caused

23.

a reasonable person in the plaintiff's shoes to inquire whether diesel exhaust could be a cause of his cancers.

{¶ 42} The court noted that plaintiff was a smoker. His doctor told him that smoking and a viral infection from which he suffered could cause cancer, and no doctors indicated that his cancer could have been caused by his workplace exposure—this was information that plaintiff learned for the first time after seeing advertisements on television and Facebook. The court would not go so far as to say that the plaintiff's claim accrued when he saw the advertisements and contacted a lawyer, but it concluded, nevertheless, that there existed factual disputes regarding when plaintiff first had a duty to investigate whether his exposure to diesel exhaust may have been a cause of his cancers. *See also Owens v. Union Pacific RR. Co.*, D.Neb. No. 8:19CV71, 2021 WL 1425154 (Apr. 15, 2021); *Marburgh v. Union Pacific RR. Co.*, D.Neb. No. 8:19CV22, 2021 WL 1893222 (May 11, 2021); *Edgett v. Union Pacific RR. Co.*, D.Neb. No. 8:18CV407, 2021 WL 1238498 (Apr. 1, 2021).

{¶ 43} The aforementioned cases were all decided by the U.S. district court for the District of Nebraska. By far, this is the jurisdiction that has most often addressed the issue of the timeliness of plaintiffs' FELA claims in the context of occupational diseases allegedly caused by workplace exposure to carcinogens. But other districts and jurisdictions have held similarly.

24.

{¶ 44} In *Curry v. Consol. Rail Corp.,* 766 F.Supp. 380, 383–84 (W.D.Pa.1991), plaintiff's decedent was diagnosed with lung cancer in October of 1979; he died March 4, 1980; sometime between March and May of 1983, plaintiff saw in the news media that asbestos can cause lung cancer; and she filed suit on January 25, 1985. The court held that viewing the evidence in a light most favorable to plaintiff, there remained a material issue of fact as to when plaintiff possessed sufficient information or facts to indicate that plaintiff's decedent's lung cancer and death may have been asbestos-related. The court cited as support *Barr v. Consolidated Rail Corporation, et al.,* W.D.Pa. No. 84–2650 (September 14, 1986), where under a similar timeline of events, the court concluded that plaintiff was entitled to the favorable inference that she did not know, nor should she have known, of facts supporting the likelihood that her husband's exposure to asbestos was related to his sickness and subsequent death. In *Barr*, the decedent retired from the railroad in 1976, he developed lung cancer and died in March of 1980, and his wife filed suit on November 2, 1984, after learning from a friend that asbestos exposure might have caused her husband's lung cancer death. There, too, the court denied summary judgment to the railroad.

{¶ 45} In *Sponcler v. BNSF Ry. Co.,* E.D.Wa. No. 2:19-cv-00286-SMJ, 2021 WL 916922, (Mar. 10, 2021), the court found that there was a genuine dispute of material fact when plaintiff discovered or should have discovered the connection between his cancer and workplace exposure, requiring resolution by a jury. There the employee was

25.

diagnosed with kidney cancer in late 2010, died on January 25, 2016, and his personal representative filed suit on January 24, 2019. The railroad argued that the employee had constructive notice of the cause of his cancer before his death, more than three years before plaintiff sued. This, the railroad argued, was evidenced by the fact that a notation was made in his medical records that he was exposed to asbestos in his workplace. But the magistrate recommended that summary judgment be denied, *Sponcler v. BNSF Ry. Co.,* E.D.Wa. No. 2:19-cv-00286-SMJ, 2021 WL 798880 (Jan. 6, 2021), and the district court agreed.

{¶ 46} The court acknowledged that different circuits have applied "varyingly stringent standards for constructive notice in the FELA context." *Id.* at * 3. In spite of the fact that the employee told his doctor of his exposure, which could lead one to conclude that he believed his cancer was caused by workplace exposure, the court found that a question of fact existed. It explained:

> [M]aybe the doctor asked a string of questions on various topics to get an understanding of the patient's history, both in relation to his cancer diagnosis or otherwise, such that Decedent reasonably did not know the purpose of the questioning. Perhaps Decedent could only have reasonably been expected to know of *general* impacts of the exposure to his health, but not that it could cause cancer. * * * Or perhaps Defendant is right, and Decedent should have known that the exposure was a potential cause of his

cancer from the discussion at his appointments or at least investigated the cause. * * * But that is not for the Court to decide in this case. A jury must determine whether Decedent should have reasonably "ma[de] the mental leap" from his exposure to his cancer.

*Id.* at * 4.

{¶ 47} Here, we find that Nuckols's case is analogous to the cases denying summary judgment to the railroads. Nuckols testified that he asked his doctor what caused his cancer and his doctor responded that he did not know. While a 2005 medical note mentions Nuckols's workplace exposure to diesel exhaust, this was in the context of being treated for intermittent dyspnea (problems breathing), and his exposure to second-hand smoke was also noted. In *Shepard v. Grand Trunk W. R.R. Inc.,* 8th Dist. Cuyahoga No. 92711, 2010-Ohio-1853, ¶ 19-22, the Eighth District Court of Appeals affirmed the denial of summary judgment on statute-of-limitations grounds despite the fact that plaintiff, years before his laryngeal cancer diagnosis, had been told by a doctor that his breathing problems could have been caused by his environment. There, as in this case, plaintiff testified that he did not know that asbestos or diesel fumes were harmful, he did not receive training by the railroad concerning their dangers, and no other doctors or health care providers ever told him that his exposure caused his health problems. *See Marburgh,* D.Neb. No. 8:19CV22, 2021 WL 1893222 (commenting that there was no evidence that decedent knew the correlation between exposure to toxins and cancer).

27.

{¶ 48} We must note, however, that several of the above-referenced cases—including *Greger,* D.Neb. No. 8:18CV577, 2020 WL 3489521, at * 5; *Owens*, D.Neb. No. 8:19CV71, 2021 WL 1425154, at * 5; *Edgett*, D.Neb. No. 8:18CV407, 2021 WL 1238498, at * 11; and *Sponcler,* E.D.Wa. No. 2:19-cv-00286-SMJ, 2021 WL 798880, at * 7—denied summary judgment after observing that the railroads had not shown "that there was publicly available information, notoriety, news reports, publicity, or knowledge" linking cancer to the plaintiffs' environmental exposures so as to prompt further inquiry, and nothing in the record indicating that a timely investigation or more searching inquiry would have informed plaintiff of the connection between the cancer and his exposures.

{¶ 49} In this case, the railroads attempted to demonstrate the public availability of such information by attaching to their summary-judgment motion screenshots and printouts of various online articles and advertisements. The railroads claimed that Nuckols would have found these materials if he had performed a "reasonably diligent" internet search from July 11, 2014, to August 31, 2014. They stated—in a footnote in their summary-judgment brief—that "[t]he basic search terms used were head and neck cancer, throat cancer, asbestos, diesel, railroad worker and cancer.'"

{¶ 50} As a preliminary matter, this is not summary-judgment quality evidence that should be considered under Civ.R. 56. Civ.R. 56(C) requires that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to

28.

interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The rule makes clear that *"[n]o evidence or stipulation may be considered except as stated in this rule*." (Emphasis added.) *Id.*

{¶ 51} The screenshots and printouts are not "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, [or] written stipulations of fact." "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)." *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222-3, 515 N.E.2d 632 (8th Dist.1986), citing *State, ex rel. Corrigan, v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981). Here, the railroads failed to attach an affidavit authenticating the screenshots and printouts they attached to their motion, identifying who performed those searches and when, and describing what combinations of terms were used.

{¶ 52} Nevertheless, the Ohio Supreme Court has held that a trial court *may* consider other documents than those specified in Civ.R. 56(C) if—as here—there is no objection. *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.,* 122 Ohio St.3d 260, 2009-Ohio-2871, 910 N.E.2d 455, ¶ 17. And this court has held that where no party objects and "the trial court considered the otherwise inadmissible evidence in granting summary

29.

judgment, then the appellate court will also consider the evidence in its de novo review."

*Consumer Portfolio Servs., Inc. v. Staples*, 6th Dist. Sandusky No. S-06-031, 2007-Ohio-1531, ¶ 30. *But see Reed v. Davis*, 2013-Ohio-3742, 995 N.E.2d 1240, ¶ 15 (10th Dist.) (holding that an appellate court "may, but [is] not required to consider * * * a document of a type not identified in Civ.R. 56(C)" even though trial court considered it and no party objected to it in the trial court or on appeal "). Given that Nuckols did not object in the trial court or challenge the admissibility of the railroads' evidence on appeal, we will consider this evidence in our de novo review.

{¶ 53} But, upon review, we find that the railroads' evidence does not demonstrate the absence of a genuine issue of material fact regarding whether an online internet search between July 11, 2014, and August 31, 2014, would have informed Nuckols of the connection between his cancer and his exposure. In fact, the railroads' evidence raises more questions than answers. In a footnote in their summary judgment motion, the railroads state that "[t]he basic search terms used were head and neck cancer, throat cancer, asbestos, diesel, railroad worker and cancer." But the railroads did not submit any evidence regarding the actual *searches* that were performed with these terms. For example, did the railroads perform a search using only the phrase "throat cancer," or did they search "throat cancer *and* diesel *and* railroad" or "throat cancer *and* diesel", etc.? If a combination of search terms was used, this would presuppose that Nuckols already knew the connection between his cancer and his workplace exposure—which is what the

30.

railroads maintain the internet searches would have revealed, and the material fact at issue. Accordingly, based on the evidence in the record, there is still a factual issue regarding whether a timely inquiry would have informed Nickols of the connection between cancer and his exposures.

**{¶ 54}** Moreover, as articulated by the court in *Greger,* D.Neb. No. 8:18CV577, 2020 WL 3489521, courts should examine two factors in analyzing whether and when a plaintiff reasonably should have known of his claim: (1) whether a reasonable person in the plaintiff's situation would have been expected to inquire about the cause of his injury in the first place, and (2) whether an inquiry would have disclosed the cause of his injury so as to put him on notice of his claim. *See also O'Connor v. Boeing N. Am., Inc.,* 311 F.3d 1139, 1150 (9th Cir.2002) (articulating federal discovery rule in CERCLA case as requiring same two-part analysis); *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir.2004) (considering same in claim under FTCA[2]); *Wilson v. United States*, E.D.Okla. No. CIV 05-384-JHP, 2006 WL 1520776, *6 (May 26, 2006) (focusing on first part of analysis in FTCA claim and finding genuine issue of material fact when cause of action accrued). Thus, the first question we must answer is whether a reasonable person in Nuckols's position would have been expected to conduct an inquiry in the first place.

---

[2] It has been observed that "'the Supreme Court and federal appellate courts regularly apply the discovery rule' to lawsuits 'brought under federal statutes' including 'the FTCA,' 'RICO,' and 'FELA.'" *Robinson v. BNSF Ry. Co.,* 553 Fed.Appx. 792, 795 (10th Cir.2014), quoting *Plaza Speedway Inc. v. United States,* 311 F.3d 1262, 1268 (10th Cir.2002).

31.

{¶ 55} Nuckols presented evidence that he did conduct an inquiry—i.e., he asked his doctor what caused his cancer and his doctor did not know. It should be up to a jury to determine if this inquiry was reasonable under the circumstances or if a reasonable person in Nuckols's situation would have conducted *further* inquiry into the cause of his cancer after that. In reaching this conclusion, we echo the concern articulated in *Greger*, that there are many causes of cancer, including those that are natural and non-negligent.

{¶ 56} In sum, based on the record before us, it is clear that Nuckols was aware (a) that he was exposed to diesel and asbestos at work, and (b) that he has cancer. But there is a genuine dispute over whether he knew, or should have known, that (a) could cause (b). There is no evidence in the record that anyone ever told him that his exposure to diesel and asbestos at work could cause cancer, nor is there any evidence that he reviewed any information to that effect before the Facebook advertisement. Moreover, even if we assume that Nuckols should have made additional inquiry after speaking with his doctor, there is a genuine dispute regarding whether a "reasonably diligent" internet search (as submitted by the railroads with their summary-judgment motion) would have required Nuckols to have already known of a potential connection between his cancer and his workplace exposure. In other words, this is not a case where the undisputed facts show that Nuckols knew the fact and cause of his injury, but was merely unaware of his legal rights.

32.

**{¶ 57}** The evidence in the record—when viewed in a light most favorable to Nuckols—is simply insufficient for us to conclude that no genuine issue of material fact exists regarding when Nuckols, in the exercise of reasonable diligence, should have known that his workplace exposure was a potential cause of his cancer. Simply put, that is a factual issue "that is not for the Court to decide in this case. A jury must determine whether [Nuckols] should have reasonably 'ma[de] the mental leap' from his exposure to his cancer." *Sponcler,* E.D.Wa. No. 2:19-cv-00286-SMJ, 2021 WL 798880, at *4. Accordingly, we find Nuckols's sole assignment of error well-taken.

## IV. Conclusion

**{¶ 58}** A genuine issue of material fact exists in this FELA action as to when Nuckols knew or, in the exercise of reasonable diligence, should have known, that his throat cancer was caused (or contributed to) by his exposure to toxic materials or carcinogens in the workplace. Accordingly, we find his assignment of error well-taken, reverse the October 13, 2021 judgment of the Lucas County Court of Common Pleas, and remand this matter to the trial court for further proceedings. The railroads are ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed
and remanded

33.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

Gene A. Zmuda, J.
DISSENTS AND WRITES
SEPARATELY.

**ZMUDA, J., dissenting,**

{¶ 59} Because I disagree with the majority's conclusion that there are genuine issues of material fact precluding summary judgment in the railroads' favor in this case, I must respectfully dissent. Upon my examination of the record, I conclude that the railroads have demonstrated that Nuckols knew, or in the exercise of due diligence should have known, both his injury and the cause of that injury at least three years prior to filing his FELA complaint. As such, I would find that the trial court properly dismissed Nuckols' complaint as untimely filed.

{¶ 60} I agree with the majority's articulation of the law governing the legal dispute at issue in this case. In particular, the majority is correct in identifying that

34.

Nuckols was obligated to bring his FELA claims "within three years from the day the cause of action accrued." 45 U.S.C. 56. The three-year clock "begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Campbell v. Grand Trunk W. RR. Co.*, 238 F.3d 772, 775 (6th Cir.2001). Notably, the inquiry into whether a reasonable person should have known of the injury and cause is an objective one, and "the injured plaintiff need not be certain which cause, if many are possible, is the governing cause but only need know or have reason to know of a potential cause." *Fries v. Chicago & Northwestern Transportation Co.*, 909 F.2d 1092, 1095 (7th Cir.1990).

{¶ 61} On July 11, 2014, Nuckols was diagnosed with cancer. Nuckols filed his complaint in this action on April 30, 2019. As indicated by the majority, the three-year limitations period was tolled during the pendency of the Pennsylvania suit, from June 9, 2016, until November 15, 2017, for a total of 524 days. Therefore, this action was timely filed only if Nuckols' cause of action accrued on or after November 23, 2014. There is no evidence that Nuckols knew of the link between his employment and his cancer prior to seeing a Facebook advertisement revealing such a connection in April 2016. Thus, the salient question is whether a reasonable person in Nuckols' position, exercising reasonable diligence, should have known about his injury and the cause of that injury sometime between his diagnosis in July 2014 and the cutoff day of November 23, 2014.

35.

{¶ 62} The analytical framework the majority uses to answer this question is a two-part test that asks (1) whether a reasonable person in the plaintiff's situation would have been expected to inquire about the cause of his injury in the first place, and (2) whether an inquiry would have disclosed the cause of his injury so as to put him on notice of his claim.

{¶ 63} As to the first part of the test, I conclude the record before us unequivocally establishes that the effort Nuckols made to ascertain the cause of his cancer falls far short of the affirmative duty a FELA plaintiff has to diligently investigate the potential cause of an injury. In *Fries v. Chicago & Northwestern Transportation Co.*, 909 F.2d 1092 (7th Cir.1990), the Seventh Circuit explained that the discovery rule does not "provide an escape for plaintiffs who are aware that some type of injury exists yet who choose to ignore it by failing to seek diagnosis and investigate the cause." *Id*. at 1095. Here, Nuckols' efforts to discover the cause of his cancer were paltry. Indeed, the sum of his efforts in this regard include one conversation with Dr. Shariff sometime in 2014, at which time Dr. Shariff told Nuckols he was unsure as to the cause of Nuckols' cancer. Nuckols made no further efforts to "protect himself by seeking advice in the medical and legal community." *U.S. v. Kubrick*, 444 U.S. 111, 123 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In short, Nuckols exercised almost no diligence in ascertaining the cause of his cancer prior to November 23, 2014, and I conclude that a reasonable person in his situation would have been expected to inquire about the cause of his injury.

36.

{¶ 64} Next, the question is whether further inquiry from a reasonable person would have disclosed the cause of Nuckols' injury so as to put him on notice of his claim. The majority answers no, and in so doing discounts the railroads' evidence of internet search results from July 11, 2014, to August 31, 2014, establishing the causal connection between cancer and railroad employment. In particular, the majority finds that this evidence is not useful because the railroads have not explained the exact searches that were performed in order to obtain the search results. I find no such difficulty in evaluating the import of this evidence.

{¶ 65} In the trial court, the railroads specified the terms they used to conduct their search, including "head and neck cancer, throat cancer, asbestos, diesel, railroad worker and cancer." While it is true that the railroads did not specify the exact phrasing of their search, such algorithmic precision is not necessary to ascertain the basic thrust of the evidence – an internet search using basic terms known to Nuckols as of the date of his diagnosis would have revealed a potential causal connection between his cancer and his railroad employment. This evidence, at a minimum, was sufficient to demonstrate that any reasonable inquiry into the cause of the cancer would have disclosed the cause of Nuckols' injury so as to put him on notice of his claim.

{¶ 66} In light of the evidence presented by the railroads, I find that the railroads met their initial burden of demonstrating the absence of any genuine issues of material fact that would preclude summary judgment in their favor. Thus, the burden shifted to

37.

Nuckols as the nonmoving party to provide evidence showing that a genuine issue of material fact does exist.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  Notably, Nuckols introduced no evidence whatsoever to rebut the railroads evidence that showed a simple internet search would have revealed the linkage between his cancer and his employment.[3]  Nuckols was obligated to present evidence that, at a minimum, raised a question of fact on this issue.  He simply failed to do so.

{¶ 67} Taken together, I would find that the evidence submitted by the railroads in this case established that there are no genuine issues of material fact as to the accrual of Nuckols' claim no later than August 31, 2014.  As such, Nuckols' claim was untimely filed, and summary judgment was appropriate.  Since the majority concludes otherwise, I must dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

---

[3] Nuckols' lack of any effort to discern the cause of his cancer is demonstrated by the fact that he only discovered the possible connection to his employment when he happened upon an attorney's advertisement on Facebook revealing the link.  There is no other evidence in the record to suggest that Nuckols exercised *any* affirmative due diligence with respect to ascertaining the cause of his cancer after his diagnosis.

38.