[Cite as *Hurston v. Grand Trunk W. RR. Co.*, 2024-Ohio-1616.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Barbara Ann Hurston, Personal
Representative of the Estate of
Douglas Hurston, Sr., Deceased

      Appellant

v.

Grand Trunk Western Railroad
Company

      Appellee

Court of Appeals No. L-23-1059

Trial Court No. CI0202201125

**<u>DECISION AND JUDGMENT</u>**

Decided: April 26, 2024

* * * * *

Stephen F. Monroe, Charles E. Boyk,
Michael A. Bruno, and Andrea R. Young, for appellant.

Kevin C. Alexandersen, Colleen A. Mountcastle,
and Brooke L. Hamilton, for appellee.

* * * * *

**DUHART, J.**

**{¶ 1}** This case is before the court on appeal by appellant, Barbara Ann Hurston, Personal

Representative of the Estate of Douglas Hurston, Sr., from the February 14, 2023 judgment of the

Lucas County Court of Common Pleas which granted summary judgment to appellee, Grand

Trunk Western Railroad Company. For the reasons that follow, we affirm.

# I. Assignment of Error

{¶ 2} The trial court erred in determining that there was no genuine issue of material fact for the jury to determine as to when Douglas Hurston knew or should have known that his laryngeal cancer was caused or contributed to by his toxic exposures at the railroad.

# II. Background

{¶ 3} Douglas Hurston (hereinafter "Hurston") was employed by appellee, and its predecessor, Detroit, Toledo & Ironwood Railroad (hereinafter "DT&I") from 1975 until approximately 1989.

{¶ 4} On December 8, 2016, Hurston was diagnosed with laryngeal cancer.

On December 19, 2019, Hurston filed a negligence action against appellee in Cook County, Illinois under the Federal Employers' Liability Act ("FELA"). That case was dismissed pursuant to the doctrine of forum non conveniens and was refiled in Lucas County on January 14, 2022. Hurston's complaint alleges that his cancer was caused by toxic substances he was negligently exposed to during his employment with appellee. [1]

{¶ 5} On August 11, 2022, appellee filed a motion for summary judgment in the trial court, arguing that Hurston's complaint was filed outside of the three-year FELA statute of limitations. Appellee alleged that Hurston was aware of his cancer diagnosis in November 2016, that diagnosis was confirmed on December 8, 2016, and that Hurston knew or should

---

[1] Any reference to Hurston's employment with appellee also includes the time he was employed by appellee's predecessor, DT&I.

2.

have known that his cancer was potentially connected to his work for appellee when he was diagnosed with cancer. Hurston opposed that motion, contending that he only began to investigate the cause of his cancer when he was informed that another employee of appellee, Mickie Norris, had developed cancer.

{¶ 6} The trial court granted appellee's motion for summary judgment. The trial court pointed to language from Hurston's deposition in which he stated that, despite his smoking history, he thought "being around chemicals during his time at the railroad 'was probably most of the cause,'" as well as to Hurston's affirmative responses when asked whether he was aware that the chemicals he was exposed to could cause cancer. The trial court also pointed to Hurston's deposition statement that "'It always had been on [his] mind,' whether the chemicals had harmed him." Based on these statements, the trial court concluded that Hurston "reasonably would have been expected to inquire as to the cause of his cancer," but that "[d]espite his concerns regarding the exposures that occurred during his employment, [Hurston] did not disclose such information to his treating physicians" or "investigate his suspicions further despite having the operative information necessary at his disposal." The trial court further determined that Hurston had more than "mere suspicion," but instead "had already begun to establish a causal connection between his cancer and employment upon his diagnosis."

{¶ 7} Hurston appealed. Hurston died on March 11, 2023, and appellant was substituted for Hurston as a party.

3.

### III.  FELA Statute of Limitations/ Burden of Proof

**{¶ 8}** We have previously explained the FELA, its statute of limitations and the applicable burden of proof as follows.

The FELA provides that "[e]very common carrier by railroad while engaging in [interstate] commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the [carrier's] negligence." 45 U.S.C. 51. "Congress enacted the FELA as a 'broad remedial statute' to assist railroad employees when an employer's negligence causes injury." "The FELA is a 'response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.'"  It is intended to be read liberally in favor of injured railroad employees.

A FELA action must be commenced "within three years from the day the cause of action accrued." 45 U.S.C. 56. For latent injuries and causes such as those involved in occupational disease cases, "[c]ourts have consistently used 'the discovery rule' to determine when the statute of limitations for a FELA claim begins to run."  Under the discovery rule, the statute of limitations "begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury."  It is an objective inquiry. Importantly, a claim does not accrue at the point at which the plaintiff realizes that a claim is actionable in the eyes of the law. * * *

4.

Because [appellee is] the moving party and [is] asserting the statute of limitations as an affirmative defense, [it has] the initial burden to show the absence of a genuine issue of material fact. * * *

Where summary judgment is granted by the trial court on statute-of-limitations grounds, an appellate court must determine "whether (1) the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued." (Cleaned up.) *Nuckols v. Consol. Rail Corp.*, 2022-Ohio-4309, ¶ 17-20 (6th Dist.).

We review a trial court's decision regarding a summary judgment motion de novo. *Id*. at ¶ 7.

### IV. Parties' Arguments

#### A. Appellant

{¶ 9} Appellant concedes that Hurston was diagnosed with laryngeal cancer on December 8, 2016, and that Hurston first filed suit in Illinois on December 19, 2019, more than three years after he was diagnosed. However, appellant contends there is a dispute as to when Hurston knew or should have known the cause of his cancer.

{¶ 10} Appellant argues that the FELA's humanitarian purpose, as pronounced by the United States Supreme Court in *Metro-North Commuter RR. Co. v. Buckley*, 521 U.S. 424 (1997), lightens a plaintiff's burden and makes jury determination of facts in FELA cases more important. In the context of summary judgment, appellant contends that the non-movant can survive summary judgment by merely providing a "minimum amount of evidence" in opposition

5.

and that summary judgment should be granted only when there is a zero possibility that the employer's negligence contributed to the employee's injury, citing to *Walsh v. Consol. Rail Corp.,* 937 F.Supp. 380, 382 (E.D.Pa.1996) and *Pehowic v. Erie Lackawanna RR. Co.*, 430 F.2d 697 (3d Cir.1970).

{¶ 11} Appellant maintains that there were genuine issues of material fact as to when Hurston knew or should have known that his cancer was caused or contributed to by his exposures to toxic substances while working for appellee. Appellant claims that the trial court erred relying on appellant's subjective knowledge that the exposures were capable of causing cancer, and that, in a FELA case, "there is a less rigid standard applied in determining when the statute of limitations begin[s] to run." She contends that the statute of limitations began to run only when Hurston had definite knowledge that his injury was work related, and that, under the FELA discovery rule, the issue as to when Hurston knew or should have known of the connection "is a fact-intensive one and should be reserved for jury determination," especially in light of the competing statements made by Hurston, including that he did not really know what might have caused the cancer and that, at the time he was using magnesium in thermite welding, he didn't know the magnesium could be cancerous - he found that out later. She asserts that the court failed to consider other possible causes, including smoking and other non-railroad related exposures, pointing out that Hurston had testified to being exposed to lead and asbestos during previous employment, putting up drywall that contained asbestos, and to "working on a house that likely had asbestos in it." She also points to the fact that he only worked at the railroad for less than fifteen years, and stopped over twenty years before his diagnosis.

6.

{¶ 12} Appellant also argues that the evidence regarding whether Hurston should have known about the link between his cancer and his employment with appellee was equivocal and based upon mere speculation. Appellant cites to *Gay v. Norfolk & W. Ry. Co.*, 253 Va. 212 (1997) that "[a]n employee's mere suspicion of an injury or its probable cause, standing alone, is not the operative standard for determining when a cause of action accrues under FELA." Instead, according to *Gay*, all the relevant evidence must be considered, including "the degree of inquiry made by the employee, the number of possible causes of the injury, whether medical advice indicated no causal connection between the injury and the workplace; the complexity of the employee's symptoms, the expert knowledge or diagnostic skill of the medical doctors or experts consulted; and the existence of a medically recognized and documented causal link between the employee's symptoms and his working conditions." She also cites to our recent case, *Nuckols*, 2022-Ohio-4309 (6th Dist.) as an analogous case holding that suspicion is not enough to trigger the accrual of the statute of limitations.

## B. *Appellee*

{¶ 13} Appellee contends that, years before Hurston's diagnosis, he had actual knowledge of the harmful potential of the exposures he was subject to during his employment with appellee. Thus, according to appellee, "the only remaining question is when a reasonable person in Mr. Hurston's position would have known, or in the exercise of reasonable diligence should have known, that there might be a connection between his exposures at work and his injury." Appellee maintains Hurston's claim accrued on the date of his diagnosis, as at that time he had all the necessary information to discover whether there was a connection between his

7.

employment and his cancer. Citing to *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1096 (7th Cir.1990), appellee argues actual knowledge is not necessary. Rather, for Hurston's cause of action to have accrued, he "need not be certain which cause, if many are possible, [wa]s the governing cause but only need know or have reason to know of a potential cause."

{¶ 14} Appellee cites to Hurston's deposition testimony wherein he stated that, as of 1975, he knew that asbestos was cancer-causing, that he knew magnesium was dangerous and suspected it was cancerous too, and that the harmful effect of his workplace exposures had always been on his mind. Appellee calls attention to the fact that Hurston "acknowledged that 'exposures [to] all these different chemicals' was 'probably most of the cause of his cancer, and that he should have advised his doctors of his exposures," and yet despite this, Hurston did not investigate the cause of his cancer.

{¶ 15} With regard to whether there is a "distinct preference" for a jury determination when considering whether a FELA claim is time-barred, appellee asserts that there is no heightened standard, citing to our standard set forth in *Nuckols*. Appellee points out that courts regularly grant summary judgment based on the statute of limitations in FELA cases, and that the statute itself does not provide for a more lenient standard.

{¶ 16} Appellee takes issue with appellant's statement that "definite knowledge" is required. It maintains that appellant is relying on outdated cases and that certainty is not required. All that is required is that appellee show that a reasonable person in Hurston's position, having the information available about his exposures at work, could have discovered

8.

the connection by undertaking a reasonable investigation. Appellee states Hurston had a duty to investigate the cause of his injury, that there is no dispute that a reasonable person could have made the connection through a reasonable inquiry to a medical professional, and, the reason that no doctor had linked Hurston's cancer to his employment is because he did not give them the opportunity to do so.

{¶ 17} Appellee also distinguishes *Nuckols* on the basis that, unlike Hurston, "Nuckols (a) asked his doctor what caused his cancer and his doctor did not know and (b) did not know that his work exposures were harmful."

### C. *Appellant's Response*

{¶ 18} Appellant contends that appellee was required to conclusively show that Hurston was aware that his work could have caused his cancer and that appellee failed to do so. Appellant points out that, when specifically asked what caused his cancer, Hurston said he didn't know, and she argues Hurston's statements were ambiguous as to when he knew that substances he was exposed to at the railroad were harmful.

{¶ 19} In regard to appellee's citations to Hurston's comments regarding magnesium, appellant observes that magnesium is not one of the "toxic substances" named in Hurston's complaint.

{¶ 20} Additionally, appellant argues that Hurston's statements do not create an obligation for a reasonable person to investigate, nor is there any evidence that an inquiry would have put him on notice of his claim prior to learning of his co-worker, Norris's lawsuit.

9.

**{¶ 21}** She further distinguishes cases cited by appellee where the injury happened at work, and insists that Hurston's claim accrued when he learned of Norris's lawsuit, not because he discovered that a legal wrong occurred, but because he then had more than mere suspicion of a causal connection.

### V. Law and Analysis

#### A. FELA Statute of Limitations and Burden of Proof

**{¶ 22}** Many of appellant's general arguments were argued in *Nuckols*, including that a plaintiff's burden in a FELA case is significantly lighter, that "juries should determine FELA cases unless there is a complete absence of probative facts supporting the plaintiff's position," and that "the statute of limitations begins to run in occupational disease cases when the employee has 'definite knowledge' that his disease is work-related. *Id.* at ¶ 10 - 11. After acknowledging these arguments in *Nuckols*, we set forth the relevant law regarding the FELA, its statute of limitations and the applicable burden of proof regarding summary judgment, which we provided above and follow here.

**{¶ 23}** Although in *Nuckols* we ultimately found that it should be up to a jury to determine whether Nuckols conducted a reasonable inquiry or whether he "should have reasonably 'ma[de] the mental leap' from his exposure to his cancer, this was after finding that the record, when viewed in a light most favorable to Nuckols, was insufficient to conclude that no genuine issue of material fact existed. Rather than requiring a "complete absence of probative facts," we applied the Civ.R. 56 test for summary judgment, requiring no genuine issue of material fact when viewed in a light most favorable to the nonmovant. This is

10.

consistent with caselaw which states that FELA cases brought in a state court are subject to state procedural rules, but federal substantive rules. *Anderson v. A.C. & S., Inc.*, 2003-Ohio-4943, ¶ 19 (8th Dist.), quoting *Vance v. Consol. Rail Corp.*, 73 Ohio St.3d 222, 227 (1995). [2]

{¶ 24} In *Nuckols*, we also appropriately based the accrual of the statute of limitations on when Nuckols knew or should have known of his injury and its cause and did not require "definite knowledge." *See Crowther v. Consol. Rail Corp.*, 2010 WL 3938315, *2 (D.Mass. Oct. 5, 2010), citing *Albert v. Maine C.R. Co.*, 905 F.2d 541, 543 (1st Cir.1990) (holding that "definite knowledge" is not required for the statute of limitations for a FELA claim to accrue).

{¶ 25} We therefore apply the law as set forth in *Nuckols*. Under that analysis, we must determine whether there is a genuine issue of material fact as to when a reasonable person in Hurston's position would have known, or in the exercise of due diligence should have known, both of his injury and the cause of that injury. "When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury." *Edgett v. Union Pacific RR. Co.*, 2021 WL 1238498, *8 (D.Neb. Apr. 1, 2021), quoting *DuBose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1031 (5th Cir.1984). It is not necessary in every case for a plaintiff to have medical or scientific confirmation of a cause before the statute of limitations begins.

---

[2] We note that the cases cited by appellant in support of the requirement that there be a "complete absence of probative facts" were federal cases. *Rivera v. Union Pacific RR. Co.*, 378 F.3d 502 (5th Cir.2004) and *Howard v. Canadian Natl./Illinois Cent. RR.*, 233 Fed.Appx. 356 (5th Cir.2007).

11.

*Greger v. Union Pacific RR. Co.*, 2020 WL 3489521, * 4 (D.Neb. June 26, 2020), quoting *Bayless v. United States*, 767 F.3d 958 (10th Cir.2014).

### B.  Whether Hurston Knew of Causal Connection

{¶ 26} To determine whether the statute of limitations expired prior to Hurston filing suit, we must determine, using an objective standard, when Hurston knew, or should have known, both of his cancer and the causal connection between that cancer and his employment with appellee.  Here, there is no dispute that Hurston was aware of his cancer at least by December 8, 2016.  The sole issue appellant raises on appeal is whether the trial court erred in finding no genuine issue of material fact as to when Hurston knew or should have known that his cancer was caused, at least in part, by his toxic exposures at the railroad.  Appellant argues that there is a genuine issue of material fact as to when Hurston knew, or should have known, that his cancer was related to his employment with appellee.  As appellant points out, there is testimony that Hurston did not "really" know what caused his cancer.  We find this statement sufficient to create a question of fact as to whether Hurston *knew* his cancer was related.  However, this statement, standing alone, is immaterial to the relevant legal issue—i.e., whether a reasonable person in his position, when exercising due diligence, *should have known* of the relationship.

### C.  Whether Hurston Should Have Known of Causal Connection

{¶ 27} We examine two factors when analyzing "whether and when a plaintiff reasonably should have known of his claim: (1) whether a reasonable person in the plaintiff's situation would have been expected to inquire about the cause of his injury in the first place, and (2)

12.

whether an inquiry would have disclosed the cause of his injury so as to put him on notice of his claim." *Nuckols,* 2022-Ohio-4309, at ¶ 54 (6th Dist.), quoting *Greger.*

### D. Should An Inquiry Have Been Conducted

{¶ 28} Here we find the trial court did not err when determining that a reasonable person in Hurston's position would have been expected to conduct an inquiry.

{¶ 29} Appellant argues there is a question of fact as to whether he should have conducted an inquiry, based upon other possible causes, including his smoking and carpentry work, and the significant length of time between his employment and his illness. While we agree that these are relevant considerations, in this case Hurston's deposition is replete with statements which establish that he had connected his cancer to his exposures at the railroad at the time of his diagnosis. He testified that when he was diagnosed, he figured being "around a lot of chemicals at the railroad" was "most of the cause" of the cancer. He also indicated that he knew some of the toxins he was exposed either could cause cancer, or, at a minimum, were hazardous to his health prior to his diagnosis. We do not find there to be any contrary evidence in the record creating a genuine issue of material fact. Although appellant cites to Hurston's statement that he did "not really" have any idea what might have caused his cancer when he was diagnosed, when questioned further he stated that he knew he had been around chemicals at the railroad, that "it had always been on his mind" that those chemicals might have harmed him, and he agreed with the statement that he "knew [he] was around things at that time that [he] knew could cause cancer." Further, there is no evidence that he learned anything new at the time that he found out about Norris's lawsuit. His testimony was merely that he decided to file suit after

13.

his brother told him about Norris's lawsuit and "what lawyers to contact." He testified that his brother had to convince him to file suit. When asked why he didn't want to file a lawsuit earlier, he only stated "that's something that [he didn't] like to really do." There is no testimony that he only became aware of the possibility that his employment could have caused his cancer when he learned of Norris's lawsuit. At best, this testimony can be read to establish that Hurston became aware he had a legal remedy. This does not affect the accrual of Hurston's claim. *See Nuckols* at ¶ 18 and *United States v. Kubrick*, 444 U.S. 111, 113 (1979).

{¶ 30} Additionally, with regard to whether Hurston would have been expected to conduct an inquiry, we find *Nuckols* distinguishable. In *Nuckols*, unlike in this case, the plaintiff testified that he was not aware that asbestos or diesel fumes were harmful until he saw an attorney ad on Facebook, that he never thought about whether asbestos could cause disease, aside from mesothelioma, and that he specifically asked his doctor what caused his cancer and his doctor answered that he did not know. Whereas here, Hurston testified that he was aware certain toxins he was exposed to at the railroad were hazardous and that he did not mention his suspicions to his doctors—although he admits he "should have mentioned it to them at the time" because "it had always been on his mind" that the chemicals at the railroad might have harmed him. He never asked his doctor about the cause of his cancer.

*E. Whether an Inquiry Would Have Put Hurston on Notice*

{¶ 31} As to the second factor, whether the inquiry would have disclosed the cause of the injury so as to put Hurston on notice, this consideration "focuses on whether, if [Hurston] had inquired about the cause of [his] illness[], the result of that inquiry would have provided [him]

14.

with knowledge of the connections between the injury and its cause." *Edgett*, 2021 WL 1238498, at *8, quoting *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1155-56 (9th Cir.2002).

{¶ 32} We first note that Hurston did not ask his doctor what caused his cancer, or conduct any other inquiry into the specific cause of his cancer, although he did acknowledge that he should have mentioned his employment with the railroad to his doctor. "FELA does not 'allow a plaintiff to unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury.'" *Caudill v. CSX Transp., Inc.*, 231 W.Va. 650, 657 (2013) quoting *Fries*, 909 F.2d at 1095-96. Instead, the law imposes an *affirmative* duty on Hurston to investigate the potential cause of his injury. *Fries* at 1095.

{¶ 33} Although Hurston did not question his doctor as to the cause of his cancer, Hurston's deposition establishes that information connecting certain toxins he was exposed to at work with cancer was available. In fact, with regard to some of the toxins, he admitted that he was aware of the dangers. He stated that he learned when he was in his twenties that cancer was a problem with asbestos, and in a conversation regarding the time he became aware he had cancer, Hurston agreed with the statement that he "knew [he] was around things at that time that [he] knew could cause cancer." He also makes statements in his deposition that he found out that certain toxins were dangerous and/or cancerous by either asking people, or by reading about them. It is immaterial to our analysis that there is not evidence regarding each of the toxins he alleges he was exposed to, or that Hurston's complaint did not specifically mention magnesium. "[K]nowledge of the specific cause of a work-related injury is not required to trigger the statute

15.

of limitations in a FELA action. Rather, a FELA claim accrues when the plaintiff knows or should know that his injury is merely work-related." *Matson v. Burlington N. Santa Fe RR.*, 240 F.3d 1233, 1236 (10th Cir.2001). Thus, Hurston's knowledge that he was exposed to anything while employed by appellee that could cause his cancer was sufficient to trigger the statute of limitations.

## VI. Conclusion

{¶ 34} For the reasons discussed above, we find appellant's assignment of error not well-taken. The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                          _____
                                                              JUDGE
Myron C. Duhart, J.

Charles E. Sulek, P.J.                                      JUDGE
CONCUR.

                                                _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.